ATCHISON, T. & S. F. RY. CO. v. WEEKS et al.

(Circuit Court of Appeals, Fifth Circuit.    December 20, 1918.)

No. 3226.

RAILROADS ⊝33(2)—FOREIGN CORPORATIONS—LIABILITY TO SUITS—DOING BUSINESS IN STATE.

> A foreign railroad company, not undertaking to do within the state any of those things for which it is incorporated, although having managers in the state who direct its operations in other states, employing only the clerical force necessary for that purpose and using the mails and interstate telegraphs in transmitting orders, is not to be regarded as doing that character of business which renders it subject to personal judgment in the courts of the state for a tort committed in another state.

Appeal from the United States District Court for the Western District of Texas; William R. Smith, Judge.

Suit by the Atchison, Topeka & Santa Fé Railway Company against J. F. Weeks and others. Decree for defendants, and complainant appeals. Reversed.

For opinion below, see 248 Fed. 970.

A. H. Culwell, of El Paso, Tex., and J. W. Terry, of Galveston, Tex. (Terry, Cavin & Mills, of Galveston, Tex., Turney Culwell, Holliday & Pollard, of El Paso, Tex., and Robert Dunlap, of Chicago, Ill., on the brief), for appellant.

George E. Wallace, of El Paso, Tex. (Weeks & Owen, of El Paso, Tex., on the brief), for appellees.

Before PARDEE, WALKER, and BATTS, Circuit Judges.

BATTS, Circuit Judge. The suit was by appellant to restrain collection of a judgment by default of a court of Texas upon a cause of action arising in tort in California. The pertinent facts are:

The appellant company, not a Texas corporation, has lines of railroad in a number of states, including Oklahoma, New Mexico, and Arizona. It has no line in the state of Texas. It formerly operated a line into El Paso, Tex., under a lease. The Railroad Commission not giving its necessary approval, the lease was not renewed. It has no permit to do business within the state, and has complied with none of the laws with reference to the doing of business by foreign corporations. It is incorporated to operate a railroad, and could not secure a permit to do business within the state. R. J. Parker, upon whom service was had, is the general manager of the appellant's Western lines. He directs the operation of the appellant's railroads by letters and telegrams to its officers and agents from his office at Amarillo, Tex. He is chief operating officer of the Pan Handle & Santa Fé Railway Company, and is required to maintain his office, as such, under the laws of the state of Texas, at Amarillo. As a matter of convenience, he directs from that point the operations of the Western lines of the appellant, the lines lying outside the state, but connecting at the state line with the Pan Handle & Santa Fé. Appellant's general superintend-

ent, trainmaster, general foreman, and mechanical superintendent are also at Amarillo. These officers maintain their residences at that place, and assist in directing the operation outside of the state of appellant's lines under their jurisdiction. The general manager and other officers have the necessary clerical force at Amarillo. Appellant does not own and maintain a railway extending to Amarillo, and does not maintain any local agent at that place, or have any office or agency there, or elsewhere in the state, except as stated. The principal offices of appellant are not in Texas.

The holding of the trial judge that jurisdiction over appellant could not be based on the relations between it and the Pan Handle & Santa Fé Railway Company is sustained by Peterson v. C., R. I. & P. Ry. Co., 205 U. S. 364, 27 Sup. Ct. 513, 51 L. Ed. 841. The matter for determination is the validity of a judgment by default upon service of citation upon R. J. Parker, manager.

A suit for damages for personal injuries is a transitory action, cognizable in the courts of any state in which the defendant may be found. A corporation, foreign to a state, may so subject itself to the jurisdiction of the state as to place itself, with reference to such an action, in the same position as an individual. This may result from the establishment in the state of the main office of the corporation, and the discharge there of the principal corporate functions, or from doing business therein in such a way and to such an extent that it will be held to be present within the state. With reference to the proposition last made, in the case of People's Tobacco Co. v. American Tobacco Co., 246 U. S. 79, 38 Sup. Ct. 233, 62 L. Ed. 587, Ann. Cas. 1918C, 537, it is said:

"The general rule deducible from all our decisions is that the business must be of such nature and character as to warrant the inference that the corporation has subjected itself to the local jurisdiction, and is by its duly authorized officers or agents, present within the state or district where service is attempted."

In connection with this rule it is said: "Each case depends upon its own facts." When such a statement may be made, a doubt arises as to whether that which is spoken of as a rule has been properly characterized.

While the formulated legal principles are too indefinite to be very useful, the adjudicated cases indicate the judicial trend. In the case of Peterson v. Chicago, Rock Island & Pacific Ry. Co., 205 U. S. 364, 27 Sup. Ct. 513, 51 L. Ed. 841, it was held that the fact that the defendant railroad company owned stock in the local subsidiary company, that its officers were the officers of the subsidiary company, and that the lines of the local company connected with its lines, did not bring it "into the state in the sense of transacting its own business there."

It is also established that the continued practice of advertising its wares in a state, and the maintenance of a staff of soliciting agents, does not subject a corporation to the local jurisdiction for the purpose of service of process (Green v. C., B. & Q. Ry. Co., 205 U. S. 530, 27 Sup. Ct. 595, 51 L. Ed. 916); although, if the agents have authority

to receive payment and checks or drafts on behalf of the company, and to take notes payable and collectible at banks in the state, it is doing business in such a way as to subject it to process (International Harvester Co. v. Kentucky, 234 U. S. 579, 34 Sup. Ct. 944, 58 L. Ed. 1479).

It is well established that, when acting under the laws of the state with reference to foreign corporations, such a corporation secures a permit, and designates agents upon whom service may be had, it subjects itself, in all respects, to the jurisdiction of the courts of the state as to any business covered by its permit; but it is doubted if such designation of an agent for service constitutes a subjection of the corporation to the courts of the state with reference to business or transactions outside the state, and not within the permit. By making application for the permit to do business, and receiving it, the corporation clearly defines the extent to which it subjects itself to the state jurisdiction. This limitation would no longer be applicable if it acted beyond the permit given. The residence within the state of the governing officers of the corporation does not constitute presence of corporation.

The doing of business which is entirely incidental to the main business, especially if it be interstate in its character, will not evidence an intention of the corporation to subject itself to the local laws. This may extend even to the maintenance of offices within the state, and the employment of such clerical help as may be necessary, without having such effect. Green v. C., B. & Q. Ry. Co., 205 U. S. 530, 27 Sup. Ct. 595, 51 L. Ed. 916.

In determining whether appellant has subjected itself generally to the jurisdiction of the Texas courts, may be considered:

(1) The business of the Atchison, Topeka & Santa Fé Railway Company is the operation of a railroad. It had no authority to operate a railroad in the state of Texas. It could acquire no such authority. The laws specifically inhibit the operation of a railroad within the state by a corporation not chartered by the state.

(2) It made no effort to secure a permit to do business as a foreign corporation, and made no effort to comply with the laws relative to foreign corporations. When it ceased to do business through the operation of a leased line, the state authorities would not permit a renewal of the lease. The state has taken no steps to compel compliance by the company with the laws affecting foreign corporations.

(3) The general manager and other officers of the corporation had their offices at Amarillo, Tex. From that point they directed the operation of the railroad outside the state. The power which they exercised had all its effect outside the state. That which was done by them in the state was not unimportant, but was purely incidental to the business for which the company was chartered, and which was conducted exclusively in other states. These incidental duties were performed by transactions interstate in their character, all orders being transmitted across the state line.

(4) The principal corporate functions of the corporation were performed at its general offices in another state by its controlling officers.

(5) The employment and payment of clerks at Amarillo could have

no effect not resulting from the employment and payment of officers. In the cases of Green v. C., B. & Q. Ry. Co., and People's Tobacco Co. v. American Tobacco Co. there were local employés and clerks hired and paid, and who worked within the state.

(6) The appellant corporation had no permit from the state of Texas to do the character of business which was done, nor was there any law which would have required or authorized the issuance of such permit. That which was done was within the rights of the corporation and of the persons who represented the corporation, as citizens of the United States. The state of Texas could not have prevented the doing of that which was done, and could not have regulated the manner in which it was done, and had no right to impose any burdens or duties or obligations or incidental liabilities as the result of that which was done.

(7) There are no facts evidencing an intention on the part of the railway company to subject itself to suit within the state of Texas on a cause of action arising outside the state, or with reference to any matter or thing other than the conduct of its offices at Amarillo. There is no fact evidencing an intention on the part of the railway company to transfer its citizenship and its corporate existence from the state of its incorporation to the state of Texas.

The conclusion is reached that, where a corporation is not undertaking to do within the state any of those things which it is incorporated to do, the only business done within the state being by managers who give direction for the operation of the business of the corporation in other states, using only the necessary clerical force to that end, and utilizing the United States mails and interstate transportation in the conveyance of directions, the corporation is not to be regarded as doing that character of business which would be equivalent to the presence within the state of the corporation, and which would be the essential basis for a personal judgment against the corporation within the state for a tort committed in another state.

It is recognized that the correctness of the conclusion is not free from substantial doubt. It can be insisted that the negative of the proposition is supported by the authorities. Such rulings as have been made in the state of Texas are contrary to the conclusion reached, though the Supreme Court has not passed upon the matter. Railway Co. v. Chisholm (Tex. Civ. App.) 180 S. W. 58. Basing his ruling largely upon Washington & Va. Ry Co. v. Real Estate Co., 238 U. S. 185, 35 Sup. Ct. 818, 59 L. Ed. 1262, the trial judge, in an able opinion, has forcibly presented the opposite view. The following cases, and a number of state cases, may be cited in support of his judgment: St. L. S. W. Ry. Co. v. Alexander, 227 U. S. 218, 33 Sup. Ct. 245, 57 L. Ed. 486, Ann. Cas. 1915B, 77; A., T. & S. F. Ry. Co. v. Sowers, 213 U. S. 55, 29 Sup. Ct. 397, 53 L. Ed. 695; Western Life Indemnity Co. v. Rupp, 235 U. S. 261, 35 Sup. Ct. 37, 59 L. Ed. 220.

It is believed, however, that the weight of authority from the governing court sustains the conclusion herein reached. In the case of People's Tobacco Co. v. American Tobacco Co., supra, the Supreme Court denied the jurisdiction of the state court, although at that time

the company was selling goods in Louisiana, where the service was had, to jobbers, and sending its drummers into that state to solicit orders of the retail trade, the charges being made by the jobbers against the retailers, and it was also carrying out a decree of dissolution under the Sherman Anti-Trust Act (Act July 2, 1890, c. 647, 26 Stat. 209).

The case of P. & R. R. R. Co. v. McKibbin, 243 U. S. 264, 37 Sup. Ct. 280, 61 L. Ed. 710, was instituted by McKibbin in the Southern District of New York; service being had on the president of the company while passing through New York. McKibbin was a brakeman in one of the New Jersey freight yards of the defendant, a Pennsylvania corporation. No part of the railway line was located in New York. It sent into that state, however, loaded freight cars, which were returned by connecting lines; tickets were issued in New York, good over the connecting lines and that of plaintiff in error. At various places on the terminal ferry at New York are signs bearing the name "Philadelphia & Reading," "P. & R.," or "Reading," and in the New York telephone directory are the words: "Phila. & Reading Ry. Ft. W. 23d St. Chelsea, 6550." The Supreme Court held that the company was not doing business in New York under such circumstances as to give the courts of New York jurisdiction to render a personal judgment.

In Toledo R. & L. Co. v. Hill, 244 U. S. 49, 37 Sup. Ct. 591, 61 L. Ed. 982, suit was filed in a New York court to recover on bonds issued by the Toledo Company, an Ohio corporation. Service was had upon the directors and vice president of the company residing in New York. The corporation had issued its bonds and secured them by mortgage; the United States Mortgage & Trust Company of New York being trustee. They were delivered to that company to be certified, and they were subject to registry and became due and payable at the office of the company in New York, where the semiannual interest was also payable. Prior to 1909, when the company defaulted, the bonds and coupons were paid at the office of the commercial firm in New York representing the company for that purpose. It was held that the company was not doing business in New York in the sense which would authorize a personal judgment in the courts of that State.

In Green v. C., B. & Q. Ry. Co., 205 U. S. 530, 27 Sup. Ct. 595, 51 L. Ed. 916, the plaintiff brought an action in a United States Circuit Court of Pennsylvania to recover damages for personal injuries in Colorado. The eastern point of the defendant's line of railroad was Chicago, the track extending westward. It was incorporated to carry freight and passengers, and to operate a railroad for that purpose. To solicit freight and passenger traffic, the person upon whom service was had was employed at Philadelphia, where he rented an office, and where he was advertised as district freight and passenger agent. Clerks were employed under him, and reports were made to him by traveling freight and passenger agents, who acted under his direction. The court says:

"Its validity [the service] depends upon whether the corporation was doing business in that district in such a manner and to such an extent as to warrant the inference that through its agents it was present there. * * * With-

out undertaking to formulate any general rule defining what transactions will constitute 'doing business,' in the sense that liability to service is incurred, we think that this is not enough to bring the defendant within the district so that process can be served upon him."

This case would seem to amply warrant the conclusion reached herein. Many additional cases, which seem to support the conclusion reached, include Goldey v. Morning News, 156 U. S. 519, 15 Sup. Ct. 559, 39 L. Ed. 517; Conley v. Mathieson Alkali Works, 190 U. S. 406, 23 Sup. Ct. 728, 47 L. Ed. 1113; Peterson v. C., R. I. & P. Ry. Co., 205 U. S. 364, 27 Sup. Ct. 513, 51 L. Ed. 841.

When the law is so doubtful in its terms or its application, there can be no impropriety in considering in its development the public policy involved. As applicable to railroad corporations, the recognition of a right to sue for damages for injuries in any place other than in the state of the injury is of very questionable policy. While the rule may be justified as to an individual on account of the ease with which the right to recover might otherwise be defeated, no such reason exists as to a railroad, whose residence and business are permanently localized. Manifestly, there are many advantages in trying such a case where the cause of action arises. The law of the cause of action is the law of the place. It may be assumed that the courts of the state can more satisfactorily administer the laws of the state than can the courts of any other state. The expense incident to a trial would usually be materially less at the place of the tort than elsewhere. The imposition upon a state of the expense of maintaining courts to try causes in which the state has no interest would be difficult to justify. The maintenance of the judicial machinery involves no light burden. Many of the states, including Texas, have been unable to provide adequate machinery. No good reason could probably be made to appear why her overworked courts should be compelled to carry any part of the burdens of other states. Considerations of this character are manifestly more for the legislative than the judicial department, but they cannot be entirely ignored when the weights of two opinions are so nearly equal.

The judgment is reversed; the cause is remanded, with instructions to enter a decree in favor of the appellant, perpetually enjoining the defendant, as prayed in the bill.

Reversed.