## CONQUES v. LOUISIANA WESTERN RY. CO. (No. 3381.)

Court of Civil Appeals of Texas. Texarkana. May 13, 1927.

Rehearing Denied May 26, 1927.

1. Corporations ⊂⇒662—Nonresident corporation is not suable in personam otherwise than by consent in state where it is not present or not doing business.

A nonresident corporation cannot be sued in personam otherwise than by consent where it is not present or not found doing business in the state in which the suit is brought.

2. Corporations ⊂⇒662—Generally, nonresident corporation may enter state and transact business in manner to make it present therein and subject to state's courts.

Generally, a corporation of one state may enter another state and transact business therein in such a manner and to such an extent as to make it present therein and subject to the jurisdiction of its courts.

3. Corporations ⊂⇒662—Nonresident corporation is subject to state's courts if such portion of its business is done in state as to enable court to say that corporation is present therein.

A nonresident corporation is subject to jurisdiction of courts of state if such a substantial part of its ordinary business is done in the state as to enable the court to say that the corporation is present in the state.

4. Corporations ⊂⇒662—Generally, nonresident corporation is subject to courts of state if conducting continuous course of business therein as distinguished from casual or sporadic transactions.

Generally a nonresident corporation may be fairly said to be present in the state and amenable to the process of its courts where it is conducting a continuous course of business in the state as distinguished from casual or sporadic transactions.

5. Corporations ⊂⇒662—Nonresident corporation doing business in state is amenable to suit notwithstanding failure to comply with statutory provisions.

Failure of nonresident corporation to comply with statutory provisions precedent to its doing business in the state does not render it any less amenable to suit.

6. Railroads ⊂⇒33(2)—Louisiana railroad operating trains into Texas and there delivering them to Texas line held suable in Texas.

Louisiana railroad corporation having physical connection with line in Texas, and whose employees after bringing trains to state boundary, center of Sabine river, continued with them across river and there delivered them to employees of Texas line, and whose president resided in Texas as president also of the Texas line, held present in the state of Texas and amenable to the process of its courts.

7. Commerce ⊂⇒81—That foreign corporation's business within state is interstate does not affect its amenability to suit.

That business of foreign corporation within state is interstate does not affect question whether it is present within the state and amenable to process of courts of the state.

Appeal from District Court, Harris County; Ewing Boyd, Judge.

Action by Mrs. Antoine Conques, individually and as next friend for her minor children, against the Louisiana Western Railway Company. From a judgment dismissing the suit, plaintiff appeals. Reversed, and cause remanded.

The appellant, a resident of Lafayette parish, La., in her own behalf and as next friend for her minor children, filed the suit in the district court of Harris county, Tex., to recover damages of the appellee, a railway corporation duly incorporated under the laws of the state of Louisiana, for negligently causing the death of Antoine Conques, the husband and father. On September 27, 1923, at a public crossing in Duson, La., the auto truck in which Antoine Conques and Elias Richard were riding at the time was struck by the locomotive of appellee being operated over the railway track, and Antoine Conques was killed by reason of the collision. The negligence alleged was "in running the train at too great a rate of speed" and "in violation of an ordinance of the town of Duson prohibiting the operation of a train at a greater rate of speed than 15 miles an hour," "failing to blow the whistle or ring the bell or give any character of warning," and "failing to keep a lookout for said crossing and for persons that were thereon or approaching the same." It was alleged that "a long string of box cars and cars loaded with baled cotton greatly obstructed the view of Antoine Conques and Elias Richard as they drove along said public road toward and over the intersection of

⊂⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

said road with the tracks of defendant." It was further alleged:

"The defendant is a corporation engaged in operating a common carrier railroad and in transporting cars containing both freight and passengers in the state of Texas and in the parish of Lafayette, state of Louisiana; and that defendant maintains officers and agents in Harris county, Tex., upon whom service of citation herein has heretofore been served."

Further:

"That at the time the said injuries were inflicted upon the said Antoine Conques, and at this time, there was and is in effect in the said state of Louisiana a statute and law similar to that in the state of Texas, giving to the plaintiffs a cause of action for the death of the said Antoine Conques."

As appears, citation issued and was duly served upon "W. R. Scott, President of the Louisiana Railroad Company, who resides in Houston, Harris county, Texas."

At the return term of the district court of Harris county, Tex., an application was made and timely filed by attorneys for the Louisiana Western Railway Company for removal of the case to the District Court of the United States for the Southern District of Texas. The application was granted; the railway company filed the bond; and the case was removed to such federal court. After the removal of the case the plaintiff by her attorneys timely filed a motion to remand the cause back to the district court of Harris county, from which it had been removed, for the reason that there was not such diversity of citizenship or other federal question as to confer jurisdiction upon the federal court to try it. As recited, "after hearing the arguments of the counsel for the respective parties," the federal judge took the motion to remand "under advisement," and later entered the following judgment:

"On the 21st day of March, A. D. 1925, came on to be heard the motion of plaintiffs in the above cause to remand it to the district court of Harris county, Tex. The court after considering said motion is of the opinion that it should be granted.

"It is now therefore ordered that motion of plaintiff to remand this cause to the district court of Harris county, Tex., be and the same is hereby sustained and this cause remanded to the district court of Harris county, and that this cause should not have been removed to this court, and that all costs incurred in this court be taxed against the defendant, for which let execution issue."

After the case was returned to the district court of Harris county, and when the case was regularly called for trial, the attorneys for the defendant sought permission as "amicus curiæ" to file and submit "suggestions" to the court "upon the question of the court's jurisdiction." Thereupon "attorneys amicus curiæ" and "attorneys for plaintiff" entered into and submitted to the trial court the following written agreement, which was filed by the clerk, viz.:

"Agreement as to what the facts are with reference to the L. W. Ry. Co. doing business in Texas:

"Mrs. Antoine Conques et al. v. Louisiana Western Ry. Co.    (No. 113868.)

"For the purpose of determining the question of jurisdiction and validity of the service in the above styled and numbered cause, the following facts are agreed to be true and correct:

"(1) That the Louisiana Western Railway Company is a private corporation created under and by virtue of the laws of the state of Louisiana, with its principal offices at New Orleans, state of Louisiana.

"(2) That the Louisiana Western Railway Company owns no property within the state of Texas, real or personal, and that its line of railroad lies wholly within the state of Louisiana. That it has never procured a charter from the state of Texas or procured a permit from the state of Texas to do business in Texas as as a railroad or common carrier of passengers and freight.

"(3) That all contracts relating to and pertaining to the operation of the Louisiana Western Railway Company are made by the Louisiana Western Railway Company within the state of Louisiana and assigned and executed in said state.

"(4) That no officers, agents or officials of the Louisiana Western Railway Company reside in the state of Texas other than W. R. Scott, president of the Louisiana Western Railway Company. That said W. R. Scott is also president of the Southern Pacific lines in the state of Texas, and that he maintains general offices and his private office, as president of the Louisiana Western Railway Company, in the city of New Orleans, La.

"(5) That the Louisiana Western Railway Company is not doing, as a common carrier of either passengers or freight, any business within the state of Texas, unless the following facts constitute doing business in Texas:

"(6) That the tracks of the Louisiana Western Railway Company extend from Lafayette to the center of Sabine river; the center of Sabine river being the dividing line between the state of Texas and the state of Louisiana.

"(7) That all freight trains operated by the Louisiana Western Railway Company, originating in the state of Louisiana and destined to points in the state of Texas, are by the crew or employees of the Louisiana Western Railway Company brought to the center of the Sabine river, and said trains are carried across the Sabine river to the west side and are delivered to the employees of the Texas & New Orleans Railway Company.

"(8) That then the employees of the Texas & New Orleans Railway Company carry a freight train from the state of Texas, destined to the points in Louisiana, that the employees of the Texas & New Orleans Railway Company take the train to the Sabine river, and that the employees of the Louisiana Western Railway Company take said train and carry it to its destination within the state of Louisiana.

"(9) That no charges are paid to the employees of the Louisiana Western Railway

Company in carrying the train from the center of Sabine river to the west side of the river; that on the west side of Sabine River there are side tracks owned by the Texas & New Orleans Railway Company, as well as the main line, and that trains originating in Louisiana are carried across the river and there turned over, on the west side of the river on the main line, to the employees of the Texas & New Orleans Railway Company, and that the train is placed on one of the side or switch tracks by the employees of the Louisiana Western Railway Company and there accepted by the employees of the Texas & New Orleans Railway Company.

"(10) All functions executed in Texas by Mr. W. R. Scott, as president of the Louisiana Western Railway Company, are performed in Houston, Tex., by correspondence with officials of the Louisiana Western Railway Company located in New Orleans, La., either by United States mail or telegram."

The following is the judgment of the trial court:

· "Be it remembered that upon the 30th day of December, A. D. 1925, the court took cognizance of the pleading filed by Garrison & Watson for the Louisiana Western Railway Company as amicus curiæ in the above-entitled and numbered cause wherein the jurisdiction of this court over the person of the defendant company was attacked, and an agreed statement of facts pertinent to the query touching the sufficiency of service on the defendant and the jurisdiction of this court over the person of the defendant having heretofore been filed herein and the plaintiff having been heard, the court is of the opinion that the law is against the plaintiff; and, it appearing to the court that the defendant company has made no appearance in the case and is before the court only as amicus curiæ, the court is of the opinion that it has no jurisdiction over the defendant herein and that said cause should be dismissed.

"It is therefore ordered, adjudged, and decreed by the court that this case should be and the same is hereby dismissed from the docket of this court, and all costs are taxed against the plaintiffs, for which let execution issue."

Appellant gave notice of appeal after motion for new trial was overruled.

S. P. Jones and Barret Gibson, both of Marshall, for appellant.

Garrison & Watson, of Houston, for appellee.

LEVY, J. (after stating the facts as above). [1-5] The question on appeal is that of whether or not the appellee is subject to the jurisdiction of the court of this state in which the suit is brought. The petition alleged that the appellee, a foreign corporation, operates a railroad as a common carrier of "both passengers and freight in the state of Texas and in the parish of Lafayette, La.," and "maintains officers and agents in Harris county, Tex." The appellant asserts and the appellee

denies that these allegations are true. It is not an open question, and it is a correct legal principle, that a nonresident corporation cannot be sued in personam otherwise than by consent, where it is not present or is not found doing business in the state in which the suit is brought. It is, however, the generally accepted rule that a corporation of one state may enter another state and transact business therein in such a manner and to such an extent as to make it present therein and subject it to the jurisdiction of its courts. Railway Co. v. Alexander, 227 U. S. 218, 33 S. Ct. 245, 57 L. Ed. 486, Ann. Cas. 1915B, 77; and other cases. As announced in the cases, "no all-embracing rule" as to what is "doing business" has been laid down, and the question has to be determined largely according to the facts of each individual case. Railway Co. v. Alexander, supra. All that is requisite is that enough of a substantial part of its ordinary corporation business be done in the state to enable the court to say that the corporation is present in the state. As generally held, the corporation may be fairly said to be present in the state and amenable · to the process of the courts and to suit, where a continuous course of business, in such a sense as to be distinguishable from casual or sporadic transactions, is conducted by authorized agents within the state. The failure of the corporation to comply with statutory provisions precedent to doing business in the state does not render it any the less amenable to suit. Its presence is not required to be lawful. Buie v. Railway Co., 95 Tex. 51, 65 S. W. 27, 55 L. R. A. 861; 14 A. C. J. p. 1373.

[6] In the present case it was an admitted fact that:

"All freight trains operated by the Louisiana Western Railway Company, originating in the state of Louisiana and destined to points in the state of Texas, are by the crews or employees of the Louisiana Western Railway Company brought to the center of Sabine river, and said trains are (then) carried across the Sabine river to the west side (in Texas) and are (there) delivered to the employees of the Texas & New Orleans Railway Company; * * * that the train is placed on one of the side or switch tracks owned by the Texas & New Orleans Railway Company by the employees of the Louisiana Western Railway Company and there accepted by the employees of the Texas & New Orleans Railway Company."

This was the continuous and customary practice of operation of the road in Texas in furtherance of shipments originating on the appellee's line of road. The circumstances do not indicate a necessary operation of the road in the manner done in furtherance of delivery by the initial carrier of through shipments to its connecting carrier only at a practicable place, although across the state line. It does not appear that the appellee was of necessity required to make such delivery by

running its trains, with its employees, a substantial distance into Texas. It rather appears that the appellee voluntarily operated its trains in the manner done merely as a way of carrying on its business. The two lines of railway were physically connected and continuous as one line of road, and it does not appear that side tracks or transfer tracks at the terminus of the appellee's road were of impracticable location by it and therefore did not exist. Traffic agreements may have existed, so far as the record shows. And, added to these circumstances, appear the admitted facts that the appellee sent its president, who was its active and chief directing officer, into Texas for actual abode, with maintenance of an office therein. It was admitted that Mr. Scott, on whom citation was personally served in Texas, was in fact the president of the Louisiana Western Railway Company, and that he actually resided and maintained an office for directing purposes "as president" in · Houston, Harris county, Tex. His abode and maintenance of office of its kind in the state was fixed, and not merely for a season or short stay. He, as appears, performed "functions" or official duties for the company "in Texas" "as president of the Louisiana Western Railway Company." "The president" was evidently domiciled there for some purpose of acting in behalf of and in furtherance of the business of the appellee. It is significant of the purpose and intention of extending the field of operation, and that is the effect. He was "also president of the Southern Pacific Lines in the state of Texas." Holding, as he did, the two offices of president, in active conduct of the business, was evidently to have the roads under one management in one state, so as to make the separate corporations substantially one for purposes of management and operation. It is not inconsistent with or contradictory of "the presence in the state" of appellee that the president also "maintains general offices and his private office as president of the Louisiana Western Railway Company in the city of New Orleans, La.," and that "all functions executed in Texas by W. R. Scott as president of the Louisiana Western Railway Company are performed in Houston, Tex., by correspondence with officials of the Louisiana Western Railway Company located in New Orleans, La., either by mail or telegram." As president, in active conduct of the business of the company, he is to be distinguished from a person who has the management of some particular branch of the business. And his intentional absence from actual abode in the state of Louisiana was by consent and direction of the appellee. He is none the less president of the company, although actually abiding in Texas and although he delegates, as within authority of the president, to particular officers or agents, appointed by him, the authority to perform the duties or affairs of the company. Such agents or officers "in Louisiana" were under his authority and direction, and he, "as president," did direct their duties, as is evident by "correspondence" from "Houston, Texas." He was not holding the office of "president" merely nominally "in Texas." There is no lack of representative capacity "in Texas." It is not therefore a controlling fact that the president also maintains offices, in a qualified sense, in Louisiana, and uses "correspondence by mail or telegram" merely as a method or way of directing and ordering performance of duties by appointed agents or officers. Mr. Scott was an authorized agent of appellee, actually abiding within the state, in fact and by intention undertaking to act for and represent the appellee in a substantial portion of its business. It is the establishing a place of business in Texas from which, through its duly authorized "president," its business is transacted, and not the manner in which Mr. Scott did it, that constitutes the appellee "present within the state" through its resident president. The nature and character of business Mr. Scott performed was not, as shown, the equivalent of "nothing more than that of solicitation." Green v. Railway Co., 205 U. S. 530, 51 L. Ed. 916, 27 S. Ct. 595, 51 L. Ed. 916.

[7] .Even though the business done is interstate rather than local is not controlling, as exempting appellee from service of process. International Harvester Co. v. Kentucky, 234 U. S. 579, 34 S. Ct. 944, 58 L. Ed. 1479; Tauza v. Coal Co., 220 N. Y. 259, 115 N. E. 915; Armstrong Co. v. Railway Co., 129 Minn. 104, 151 N. W. 917, L. R. A. 1916E, 232, Ann. Cas. 1916E, 335. It is difficult to distinguish in principle the present case from St. Louis Southwestern R. Co. v. Alexander, 227 U. S. 218, 33 S. Ct. 245, 57 L. Ed. 488, Ann. Cas. 1915B, 77. There is a difference in the facts in the case of Atchison, T. & S. F. R. Co. v. Weeks (C. C. A.) 254 F. 513. In the present case the appellee extended the field of operation to Texas by operating its trains in hauling and delivering freight, and established the abode of an authorized agent within the state in fact and by intention. It is believed that it may be fairly said that the appellee was present in the state in such sense as to make it amenable to the process of the courts and subject to suit herein.

The judgment is accordingly reversed and the cause remanded for trial.