LOUIS BLAUSTEIN and Others, Suing on Behalf of Themselves and on Behalf of all Stockholders of PAN AMERICAN PETROLEUM & TRANSPORT COMPANY Similarly Situated, Plaintiffs, *v.* PAN AMERICAN PETROLEUM & TRANSPORT COMPANY, STANDARD OIL COMPANY (INDIANA) and Others, Defendants.

Supreme Court, Special Term, New York County, April 29, 1937.

*Hughes, Schurman & Dwight* [*Richard E. Dwight, Ralph S. Harris, John F. Oaskey* and *Frederick W. P. Lorenzen* of counsel], for the defendant Standard Oil Company (Indiana), appearing specially for the motion.

*Winthrop, Stimson, Putnam & Roberts* [*Henry L. Stimson* and *Allen T. Klots* of counsel], for the plaintiffs.

McLAUGHLIN (CHARLES B.), J. This is a motion made by the defendant Standard Oil Company (Indiana) to vacate the service of the summons herein. This defendant, hereinafter referred to as "Indiana" for convenience, is an Indiana corporation. It was organized under the laws of that State in 1889 and is engaged in refining, manufacturing, distributing and selling petroleum products. While it is duly qualified to transact business in various midwestern States, it is neither licensed nor qualified to do business as a foreign corporation in the State of New York. Indiana does not maintain any New York office, but employs an eastern sales representative, one Preston J. Beale, who resides in New York city, and maintains his office at 122 East Forty-second street. Indiana's name does not appear on the door of this office or on the bulletin board, nor is it listed in the telephone directory. The territory in which Beale acts as Indiana's sales representative covers all the section lying east of the Appalachian Mountains. It appears that Beale solicits orders for Indiana's products, most of which are for shipments to other States. Some shipments of certain by-products are made in New York but the contracts, approvals and payments are all made at Indiana's Chicago office. Beale's office in New York does not handle any of this business but is used apparently as his headquarters. (He is not authorized to collect and never collects any money for the defendant in New York. He sends no bills from New York, keeps no books of account or records here nor does he transmit any money to the defendant from New York. His stationery bears his own name and merely contains a notation that he is the eastern representative of the defendant Indiana.) He is paid a fixed salary of $400 a month for his services and his office expenses are paid by Indiana. Two bank accounts are maintained by defendant in New York, but neither one is maintained as a necessary adjunct to doing business in this State. Beale has no authority to draw on these accounts.

The defendant Pan American Petroleum and Transport Company, hereinafter referred to as Pan Am., was organized in 1916 and is a Delaware corporation with its principal office in New York city. Indiana has acquired stock of Pan Am. and at the present time owns approximately seventy-eight per cent of its outstanding shares. Three of the nine directors of Pan Am., namely Seubert, Barkdull and Stephens, are also officers and directors of Indiana. Seubert is also chairman of the Pan Am. board of directors. These three directors are not residents of New York but come here regularly to attend the meetings of the board of directors of Pan Am., as well as the meetings of Pan American Southern Corporation, ninety-six per cent of whose stock is also owned by Indiana. Every one of these directors receives from Pan Am. a yearly salary of about $5,000, while their salaries from Indiana average approximately ten times that amount. Only a small portion of their time, however, is devoted to Pan Am. compared to the time they devote to Indiana. Three of the other directors of Pan Am. are former directors or employees of Indiana. The remaining three directors are nominees of the plaintiffs. It is apparent that Indiana controls Pan Am. by reason of the amount of stock it holds.

Service was allegedly effected upon Indiana by serving copies of the summons and complaint upon Seubert as president of Indiana in this State on January 26, 1937. That service is attacked by Indiana upon the ground that it is a foreign corporation not doing business in the State of New York. In answer to this contention the plaintiffs assert, (a) that the moving defendant " is here through the presence and activities within the State of its own high officers and other representatives engaged in carrying on in New York both types of its primary activities, to wit: Its business as a great holding company and head and parent of a large corporate organization and its commercial business as a manufacturer and seller of petroleum products; " (b) that aside from this the moving defendant is transacting a substantial portion of its business in the State of New York.

Under the first contention it is claimed that Indiana " is here because it comes here itself *through its own representatives* to manage and control these subsidiaries." Indiana's activities in Pan Am. are those of a controlling stockholder. Let us assume that Indiana is an individual residing outside the State and owning a controlling stock interest in Pan Am. By reason of that control the individual could elect as directors such persons as he saw fit. Those directors would naturally be inclined to do the stockholders' bidding. They might even be residents of this State, which is not so with

regard to Seubert, Barkdull and Stephens, and yet that fact would not place the stockholder himself within the State. Indiana is in a similar situation, for, like the individual, it is a majority stockholder able to elect directors in Pan Am. who do its bidding. This court can see no basis for a finding that the activities of Indiana as a stockholder in Pan Am. moved Indiana to New York either temporarily or permanently. Plaintiffs reply upon *Ruff* v. *Manhattan Oil Co.* (172 Minn. 585; 216 N. W. 331). That case seems to stand alone. The great weight of authority appears to take the opposite view. (*Cannon Manufacturing Co.* v. *Cudahy Packing Co.*, 267 U. S. 333; *Conley* v. *Mathieson Alkali Works*, 190 id. 406, 409, 411; *Peterson* v. *Chicago, Rock Island & Pacific R. Co.*, 205 id. 364, 391, 392; *People's Tobacco Co.* v. *American Tobacco Co.*, 246 id. 79, 87; *Selbert* v. *Lancaster Chocolate & Caramel Co.*, 23 F. [2d] 233; *General Inv. Co.* v. *Lake Shore & M. S. R. Co.*, 250 Fed. 160; *Consolidated Textile Co.* v. *Gregory*, 289 U. S. 85; *Hutchinson* v. *Chase & Gilbert*, 45 F. [2d] 139; *Atchison, T. & S. F. R. Co.* v. *Weeks*, 254 Fed. 513; *Hurley* v. *Wells-Newton Nat. Corp.*, 49 F. [2d] 914; *Creager* v. *Collier & Son Co.*, 36 id. 783; *Phila. & Reading Ry. Co.* v. *McKibbin*, 243 U. S. 264.) Aside from this, the *Ruff* case is clearly distinguished from the present case. There the defendants' officer was an officer of its subsidiary present in Minnesota. At the time of the service, however, he was not doing the subsidiary's business, but was engaged in the work of the parent corporation. The defendant actually took part in the conduct of the subsidiary's business, gave orders to its various departments, sent an auditor to audit its books and was paid $350 a month by the subsidiary for the services of the men it sent to supervise the operation of the subsidiary's business. There was a complete disregard by the parent of the subsidiary's separate corporate entity, which is not found in the present case. The defendant in that case was unquestionably doing business in Minnesota. However, in this case everything that Indiana did in New York, it did as a stockholder of Pan Am.

Plaintiff contends that the exercise of executive functions within a State confers jurisdiction over the corporation, but that is not the situation here. Pan Am. and Indiana were separate and distinct corporations. The business done at the meetings attended by these directors was the business of Pan Am. Pan Am. paid the expenses of these directors and paid them a salary for the work they did. It may be true that indirectly Indiana profited as the result of the activities of these directors, but so far as their work as executives was concerned, it was the work of Pan Am. done by them as directors. The cases cited by plaintiff on this point

differ sharply from the instant case. In *Washington-Virginia Railway Co.* v. *Real Estate Trust Co.* (238 U. S. 185) the foreign corporation was actually maintaining its executive office in Pennsylvania. This is revealed in the statement of facts set forth on pages 188 and 189: " At the office in Philadelphia, the corporation kept its regular business ledgers, its stock transfer books and stock ledgers. The bookkeeper of the company had his desk in the office at Philadelphia, made his entries in the corporation books kept there, and conducted general correspondence in relation to the company's business at that office. The treasurer of the company maintained the only treasurer's office of the company there, and had there his desk, papers, and books. * * * The president had his desk at the office in the Real Estate Trust Building, where he was present two days in each week and went to Washington twice a week. While in Philadelphia, the president transacted such business of the company as came to his attention, and conducted the correspondence of the company upon official stationery, upon which appeared the address at the Real Estate Trust Building, and the words, ' Office of F. H. Treat, President, Philadelphia,' or, ' Office of the President, Philadelphia.' " Additional facts were shown but the foregoing are recited to show what is really meant by the exercise of executive functions by a foreign corporation in another State. In the cases of *Pomeroy* v. *Hocking Valley Ry. Co.* (218 N. Y. 530); *Stockton* v. *Goodyear Tire & Rubber Co.* (124 Misc. 213); *Stark* v. *Howe Sound Co.* (141 id. 148), also cited by plaintiff on this point, similar facts were shown. In all these cases it appeared that the business of the foreign corporation, instead of being conducted from its home office outside the State, was actually being conducted by its officers in the State. The situation in the instant case is different, for whatever is done in this State by Seubert, Barkdull and Stephens, is within the scope of their employment as directors of Pan Am. If there was any wrongdoing on their part they are responsible to the plaintiffs as stockholders. If Indiana as a stockholder was a co-conspirator with these directors it may also be held responsible, but not in a forum where it is not present. The case of *Farmers' Loan & Trust Co.* v. *N. Y. & N. R. Co.* (150 N. Y. 410) and the kindred cases cited with it are not in point, for they hold merely that if the majority stockholder is a co-conspirator, it can be held.

Plaintiff's second contention, namely, that Indiana is transacting a substantial portion of its business in New York, is not sustained by the evidence presented. In support of this contention plaintiffs urge that Indiana maintains a permanent office here and that as the result of the activities of Beale, its eastern sales

representative, about $500,000 worth of Indiana's products are shipped to New York annually. The question then arises, " Is Indiana here to do that business or does it do it from without the State? " In determining the answer to that question this court must follow the decisions of the courts of this State. The question whether the State court has obtained jurisdiction is generally one involving procedure only and in such cases the United States Supreme Court will not review a decision of the highest court of a State. (*Standard Oil Co. of Indiana* v. *State of Missouri*, 224 U. S. 270, 281.) Assuming, however, that the present case comes within the authority of *Pennoyer* v. *Neff* (95 U. S.. 714) and kindred cases (which clearly it does not), nevertheless we would be bound to follow the existing decisions of the Court of Appeals of this State with regard to the question before us until it has changed its ruling. (*Bourjois Sales Corp.* v. *Dorfman*, 273 N. Y. 167.) The papers on this motion show that Beale acts as the sales representative of Indiana and solicits orders here which are subject to acceptance or refusal at defendant's Chicago office. That does not constitute doing business in this State. (*Pennrich & Co., Inc.,* v. *Juniata Hosiery Mills, Inc.,* 247 N. Y. 592; *Lillibridge, Inc.,* v. *Johnson Bronze Co.,* Id. 548.) Those cases were even stronger on the facts than the present case, for there it appeared that the defendant had its name on the door of the office maintained by the sales representative and also had its name listed in the telephone directory, and still the Court of Appeals held that the corporation was not doing business here. Those additional facts are not present in this case. The fact that Beale's office expenses are paid by Indiana is not important. It is the usual thing for a corporation to pay the expenses of its salesmen, and it is, therefore, natural that Indiana should pay Beale in addition to his salary the expenses of maintaining his office or headquarters from which he operates. As long as Beale confined his activities to those of a sales representative, his acts did not constitute doing business here on the part of Indiana.

There is nothing presented on this motion to show that Beale was acting in any other capacity than that of sales representative at the time the alleged service on Indiana took place. The case of *St. Louis S. W. Ry.* v. *Alexander* (227 U. S. 218), relied on by plaintiff, is not in point, for there two foreign affiliated companies maintained a single office in New York with agents who were authorized on behalf of both corporations, not only to solicit business but to negotiate settlements with respect to claims. Beale did not have the right to settle claims although he was permitted to attempt to placate customers.

Under the facts of this case the Federal decisions hold that defendant was not doing business in New York. (*Cannon Manufacturing Co.* v. *Cudahy Packing Co., supra; Conley* v. *Mathieson Alkali Works, supra; Peterson* v. *Chicago, Rock Island & Pacific Ry. Co., supra; People's Tobacco Co.* v. *American Tobacco Co., supra; Selbert* v. *Lancaster Chocolate & Caramel Co., supra; General Inv. Co.* v. *Lake Shore & M. S. R. Co., supra; Consolidated Textile Co.* v. *Gregory, supra; Hutchinson* v. *Chase & Gilbert, supra; Atchison, T. & S. F. R. Co.* v. *Weeks, supra; Hurley* v. *Wells-Newton Nat. Corp., supra; Creager* v. *Collier & Son Co., supra; Phila. & Reading R. Co.* v. *McKibben, supra; Davega* v. *Lincoln Furniture Mfg. Co.,* 29 F. [2d] 164.) The decisions of the New York Court of Appeals also hold that on the facts presented the defendant was not doing business here. (*Pennrich & Co., Inc.,* v. *Juniata Hosiery Mills, Inc., supra; Lillibridge, Inc.,* v. *Johnson Bronze Co., supra; Hamlin* v. *Barrett & Co., Inc.,* 246 N. Y. 554; *Compania Mexicana* v. *Compania Metropolitana,* 250 id. 203; *Holzer* v. *Dodge Bros.,* 233 id. 216.) Under the facts disclosed the service upon the president of Indiana while he was in New York was, therefore, ineffective to obtain jurisdiction of the defendant. The motion to set aside the service of the summons is granted. Settle order.