NEW YORK AUTOMATIC CANTEEN CORP., Plaintiff, *v.* KEPPEL & RUOF, INC., Defendant.

City Court of the City of New York, Special Term, New York County, June 8, 1949.

*William A. Carroll* for plaintiff.

*Carl E. Heilman* and *John Paul Good* for defendant appearing specially.

MAX J. WOLFF, Referee. The defendant is a Pennsylvania corporation which is not authorized to do business in New York, not having complied with the provisions of section 210 of the General Corporation Law. It has moved to vacate service upon it of the summons in this action and asserts (1) that it is not present in this jurisdiction and (2) that the person who was served with the summons was not its managing agent within the meaning of subdivision 3 of section 229 of the Civil Practice Act.

The evidence showed that the defendant has an office for the transaction of business in Lancaster, Pennsylvania, and that its factory, where it manufactures candy, is located in the same city. It has no place of business in New York and does not hold itself out to be doing business here. It has no employees in

this State, it has no bank account here and no assets of any kind within the jurisdiction. It does not have a telephone or a telephone listing in New York; it is not listed in any local directory.

It sells candy to about one hundred firms within the city of New York through the medium or agency of one Marks, a commission salesman who represents not only the defendant but about eight other firms. About 15% to 20% of the goods sold by Marks during the course of a year are those of the defendant. Marks does business from his residence, which is in an apartment building in this city. His business card reads as follows: " Stanley L. Marks — Candy Broker ", and shows his home address. The name of the defendant does not appear on Marks' stationery or business card.

Marks receives no expense money from the defendant but gets a 5% commission upon all sales which he procures for it. He does not have authority to make binding contracts; all orders are accepted at the defendant's office in Pennsylvania; in practice, however, there is no real trouble about this because Marks takes orders only from financially responsible customers, who over a period of years are usually the same people, so that only about one half of 1% of the orders received by Marks have been rejected by the defendant.

Marks has represented the defendant in New York City for the past twenty-two years. He employs an assistant salesman, whose salary he pays. In addition to his solicitation and selling activities in defendant's behalf, Marks investigates complaints of customers and makes recommendations to defendant concerning adjustments for defective merchandise, and so forth. Sometimes these recommendations are accepted, and at other times they are rejected. When the defendant has refused to make an adjustment with one of Marks' good customers, Marks has sometimes himself paid a small amount of money out of his own pocket in order to satisfy the customer. Occasionally Marks will reroute a shipment from a customer who has rejected it to another customer, after having first obtained permission to do so from defendant's Pennsylvania office. Marks has made some collections on behalf of defendant. He testified that he collects about thirty-six checks a year, aggregating approximately $3,600. The checks are invariably made out to the order of the defendant, and Marks has simply forwarded them to the defendant's Pennsylvania office.

The defendant shipped into the city of New York in the calendar year of 1947, candy which aggregated in amount approxi-

mately $70,000. The defendant's total gross sales for that year were $1,031,901.60. In 1948 the defendant's shipments into the city of New York came, in round figures, to about $60,000. Its total gross sales for that year were $792,236.69. In the first three months of 1949 defendant's deliveries into New York totaled somewhere between $9,000 and $11,000. The defendant's gross sales for those three months approximated $200,000. Thus, defendant's sales into New York constitute about 7% of its entire business.

It seems to me that if Marks were in the direct employ of the defendant it would be necessary to find that the defendant is present within the jurisdiction. The steady and continuous solicitation by Marks of numerous customers, with the result that defendant has made sales into New York amounting to at least $60,000 per year and to about 7% of its gross business, would in itself be enough to warrant the assumption of jurisdiction over the defendant. Other activities of Marks in defendant's behalf would also have significance, such as the investigation of and attempts to adjust complaints by customers of defendant, supervision of deliveries of merchandise, and the making of collections. (*Tauza* v. *Susquehanna Coal Co.*, 220 N. Y. 259; *Holzer* v. *Dodge Bros.*, 233 N. Y. 216; *International Harvester Co.* v. *Kentucky*, 234 U. S. 579; *International Shoe Co.* v. *Washington*, 326 U. S. 310.)

Does the fact that Marks is not an employee of the defendant but rather an '' independent '' salesman, representing a number of other firms, alter the legal consequence of his considerable activities in behalf of defendant? To this question *Bomze* v. *Nardis Sportswear* (165 F. 2d 33) would seem to afford a negative answer; although it must be conceded that the '' cumulative significance '' of the defendant's activities was somewhat greater in that case than here. Moreover, LEARNED HAND, C. J., writing for the court in the *Bomze* case (*supra*, p. 36), said that in comparing the facts before him with those in the '' bellwether decisions '' of the New York courts he could but '' guess at — the importance of any differences.'' Also, he indicated that there was difficulty in reconciling the decision in *Ray D. Lillibridge, Inc.*, v. *Johnson Bronze Co.* (247 N. Y. 548, affg. 220 App. Div. 573) with that about to be reached by his court in the *Bomze* case.

It seems to me that the *Lillibridge* case (*supra*), which has never been expressly overruled and seems not to have been modified by any subsequent decision in New York touching the specific point, to wit, the activities of an '' independent '' agent or salesman, compels the conclusion that the activities carried

on by the defendant in the present case through Marks have not subjected it to our jurisdiction. A differentiation between a salesman working for a salary, and full time for one employer, and one who works for commissions, and for several employers, does not entirely satisfy one's mind. Certainly it would be unrealistic, in some circumstances, to consider the latter an " independent " agent. He is not like an independent merchant or distributor who buys in his own name and resells in his own name, as in *Hastings* v. *Piper Aircraft Corp.* (274 App. Div. 435). In a practical sense his activities are those of his employer and his business is that of his employer even though he is compensated by commissions instead of by a fixed salary, and even if he has not one but a number of masters. But distinctions of the sort have nevertheless been held vital. (Cf. *Ray D. Lillibridge, Inc.,* v. *Johnson Bronze Co., supra*; *Pennrich & Co.* v. *Juniata Hosiery Mills,* 247 N. Y. 592, affg. 220 App. Div. 763; *McKeon* v. *McGowan & Sons,* 229 App. Div. 568; *Siless* v. *Reading Maid Hosiery Mills,* 242 App. Div. 803; *Blaustein* v. *Pan American Petroleum & Transport Co.,* 163 Misc. 749, affd. 251 App. Div. 704.)

If the defendant had held itself out as having a place of business within the city of New York, it might have been appropriate to find that it had brought itself within the jurisdiction. Such a " holding out " was deemed significant in *Pine & Co.* v. *McConnell* (273 App. Div. 218, affd. 298 N. Y. 27). In that case, which involved the application of section 229-b of the Civil Practice Act, relating to the service of process on a nonresident natural person doing business within the State, the defendants functioned not through employees but rather by independent corporate agents. The sum total of the activities of those agents, as well as the general discretion invested in them, and the afore-mentioned " holding out ", were deemed sufficient to subject the defendants to the jurisdiction of a court of this State.

A case rather favorable to the plaintiff's contention here, and somewhat difficult to reconcile with the *Lillibridge* case (*supra*) is *Bersin* v. *Boath, Junr., & Co.* (198 App. Div. 344). However, the *Bersin* case (*supra*) was decided in 1921; the *Lillibridge* case was decided in 1927. (Also cf. *Eagle Mfg. Co.* v. *Arkell & Douglas,* 197 App. Div. 788, affd. 234 N. Y. 573.)

It seems to me that the controlling New York cases indicate the conclusion that the activities of this defendant, carried on through its commission salesman, have not brought it within the jurisdiction of the court. In coming to this conclusion, I have

applied as best I could the standards suggested by the leading decisions of the courts of this State. If these standards seem somewhat indefinite and shifting, perhaps that is because the decision in each case was essentially the determination of a question of fact (see concurring opinion of FRANKFURTER, J., in *United States* v. *Scophony Corp.*, 333 U. S. 795, 818). It seems that, in the nature of things, there can be "no precise test" (*Tauza* v. *Susquehanna Coal Co.*, 220 N. Y. 259, 268, *supra*).

It is necessary to find also that Marks was not a managing agent of the defendant within the meaning of subdivision 3 of section 229 of the Civil Practice Act; that he was not an agent "invested * * * with general powers involving * * * judgment and discretion" (cf. *Taylor* v. *Granite State Provident Assn.*, 136 N. Y. 343, 346, and *Yeckes-Eichenbaum, Inc.* v. *McCarthy*, 290 N. Y. 437, 444). This, too, is not an easy conclusion, for it is undeniably true that Marks "managed" defendant's local affairs to the extent that local management was a necessary part of defendant's business. It is not a complete answer to say that his powers and discretion as an agent were limited. That is true to some extent of every "managing agent". Here, too, the question is one of degree and of fact.

It is recommended that the service be quashed.

Dated: May 19, 1949.

FRANK A. CARLIN, J. On this motion to vacate the service of the summons herein on the ground that defendant, a foreign corporation, was not doing business in the State of New York, and, secondly, that the summons was served on one not the managing agent of said defendant, the foregoing questions were referred to Max J. Wolff, Esq., the Referee of this court, on January 17, 1949; it appears from his report made and filed herein on May 19, 1949, and his learned and lengthy opinion on which the report is predicated that the defendant neither was doing business in this State nor was the service of the summons made on a managing agent under subdivision 3 of section 229 of the Civil Practice Act. On this motion to confirm the report the attorneys for plaintiff submit a memorandum in opposition; the court has read the authorities cited by the learned Referee and those set forth in the opposing memorandum; the report of the Referee is confirmed. Motion to vacate the service of the summons herein is, therefore, granted.