URY GERTSENSTEIN, Plaintiff, *v.* PENINSULAR & ORIENTAL STEAM NAVIGATION COMPANY, Defendant.

City Court of the City of New York, Special Term, New York County, April 29, 1952.

*Leonard Leaman* for defendant appearing specially.

*Abraham Bloom* for plaintiff.

MAX J. WOLFF, Referee. The defendant has moved to vacate service upon it of the summons in this action upon the ground that it is not present within this jurisdiction. It has by stipulation waived the question, which would otherwise be open, whether the summons was delivered to a proper person in accordance with section 229 of the Civil Practice Act.

The defendant is a British corporation and has not filed a certificate of doing business in this State. It is a shipping company which maintains service from England and intermediate European ports to the Far East and Australia. Its ships do not enter any port in this State or anywhere in the United States. Its principal offices are located in London, and it does not appear that it has any directors, officers or employees who reside within the State of New York. It maintains no office or place of business within the State and has no bank account or property here.

It has designated the Cunard Steam-Ship Company Limited (hereinafter called Cunard) as its general passenger agent in New York. Cunard is a British company, but it was conceded, for the purpose of this action, that it is present within the jurisdiction. Cunard owns and operates many ships and acts as agent in New York for other shipping companies, and it is fair to assume that the business which it transacts for the defendant is but a small part of Cunard's over-all business in New York.

As general passenger agent for the defendant, Cunard books accommodations for persons who seek passage on the defendant's vessels. It does not issue a passage ticket, so-called, to any passenger but instead gives him in return for his passage money what it has designated as a "passage order for reservations on transportation facilities not owned by Cunard". These quoted words are printed in conspicuous letters on each so-called "passage order" form. The "passage order" in each case contains a notation of the specific accommodation thereby reserved and the amount of the fare as well as the name of the passenger and is honored at the port of embarkation, where it is exchanged for the usual ship's ticket. I see no significant difference between a ship's ticket and a "passage order".

The business of arranging these "passage orders" is taken care of by employees of Cunard's at Cunard's principal office in New York City. Cunard has caused the defendant to be listed in the New York City (Manhattan) telephone directory, but the number under which it is listed is Cunard's. Cunard's employees, operating through its "tourist department", do their best to sell the defendant's passenger service to prospective travelers. In 1949 as many as 250 such "passage orders" were sold through Cunard's. In 1950 the number was 373; in 1951 it was 351. The amount thus collected by Cunard in 1949 was $92,264.79; in 1950 it was $115,573.27; in 1951 it was $127,964.54. About 50% of these "passage orders" were sold by Cunard in New York; the rest were sold elsewhere in the United States but the transactions were consummated and the money transmitted through Cunard's New York office. Thus, Cunard collected these moneys in New York and then transmitted them to defendant in London, deducting a commission for itself, which in the case of sales that it made directly amounted to 7½% and to 2½% in the case of sales made through some travel agency. The bookings which Cunard effected for passengers who acquired their "passage orders" from it represented space which Cunard had in allotment or for which it cabled or wrote to London or elsewhere, as it sometimes did.

Cunard has also represented the defendant in connection with freight shipments on defendant's vessels. No bills of lading were issued here even when the freight was booked as a result of the activities of Cunard, whose employees actively solicited freight shipments. These solicitation activities did not amount to much, either from the point of view of time and effort expended or results accomplished. The last booking of freight by Cunard on behalf of the defendant occurred in 1949; and

for the period of three and a half years before 1949 the total of such bookings of freight aggregated approximately $30,000. Cunard had in defendant's behalf solicited five or six firms in that period of time for business of this kind.

Cunard has available in its New York offices and distributes whenever possible literature and ship cards showing sailings of defendant's vessels from ports in Europe, the Far East and Australia. Defendant's literature locally distributed by Cunard is rubber-stamped with the legend " Cunard Steam-Ship Co. Ltd. — General Passenger Agents ".

Applying to these facts the general criteria indicated in the New York decisions, it seems to me that the defendant is not present within the jurisdiction, that it has not done business here of a kind and to an extent sufficient to render it amenable to the service of process in an action in personam. Cunard's activities in behalf of the defendant are little more than those of any independent travel agency which arranges for accommodations on ships, railroads and airlines. Although the legalistic devices which are employed may be different nevertheless every major transportation company is represented in this fashion in great cities by one or more travel agencies such as Thomas Cook & Son or the American Express Company. That Cunard is itself in the steamship business does not alter the case. It was not shown that Cunard is directly related to the defendant, that these are interlocking companies or that one company is in any way a subsidiary of the other. Apart from the listing in the telephone book there has been no holding out by defendant that it does business within this jurisdiction; I do not in the circumstances evaluate the telephone listing which Cunard provided for the defendant as such a holding out. Except for the passenger bookings through Cunard hereinabove described, defendant's contacts with this jurisdiction have been minimal. The relatively small amount of freight solicitation and bookings which took place in and before the year 1949 ceased wholly, as testified at the hearing, when Japan was partially rehabilitated.

It seems to me that the activities of Cunard, as defendant's independent agent, were not sufficient to subject defendant to the jurisdiction of this court, although a different conclusion might well have been reached if the defendant operated here through its own employees and in its own offices. This finding is in accordance with the controlling New York cases (*Lillibridge, Inc.,* v. *Johnson Bronze Co.,* 247 N. Y. 548, affg. 220 App. Div. 573; *Pennrich & Co.* v. *Juniata Hosiery Mills,* 247 N. Y.

592, affg. 220 App. Div. 763; *Siless* v. *Reading Maid Hosiery Mills*, 242 App. Div. 803; *Blaustein* v. *Pan American Petroleum & Transport Co.*, 163 Misc. 749, 251 App. Div. 704; *Vassallo* v. *Slomin*, 278 App. Div. 949).

It is true that in *Sterling Novelty Corp.* v. *Frank & Hirsch Distr. Co.* (299 N. Y. 208) the court, by FULD, J., said: "The circumstance that the foreign corporate defendant is represented in its local activities by a separate individual or by a separate corporation and not by a directly controlled subsidiary or branch office is not in itself determinative" (p. 211); but in the same case it was said: "We deem it worth remarking that this is not a case in which the foreign corporation's only ties with this State were through an independent resident buyer who acted for many other purchasers at the same time" (p. 212). I take it, therefore, that *Sterling* did not completely overturn the earlier cases in which effect was given or in which controlling significance was attached to the fact that the foreign corporation sought to be subjected to our jurisdiction acted through an independent agent, such as the typical manufacturer's representative. *Sterling* should be viewed in the light of its own facts; there the local independent agent or representative was a closely connected subsidiary corporation, and was little, if anything, more than the local buying office or department of the foreign defendant.

In determining the issue here, which is essentially a question of fact (see concurring opinion of FRANKFURTER, J., in *United States* v. *Scophony Corp.*, 333 U. S. 795, 818), I am required to apply the standards and tests indicated by the New York decisions, with an eye to the Federal decisions only to avoid transcending the limitations imposed upon the State by the due process clause of the Federal Constitution as it has been interpreted in the Federal courts. If the defendant is not doing business here, if it is not present here, within the meaning of these phrases as by their concrete application they have been defined in the controlling New York cases, I may not look beyond to Federal court decisions (except those in which a Federal court was required to find and apply New York law, and which are therefore persuasive although not controlling, e.g., *Bomze* v. *Nardis Sportswear*, 165 F. 2d 33; cf. discussion in *New York Automatic Canteen Corp.* v. *Keppel & Ruof*, 195 Misc. 526.) Even if it be assumed *arguendo* that in subjecting foreign corporations to our jurisdiction the courts of New York have not yet gone as far as the courts of the United States will now permit them to go, it is for the appellate courts, and not for

me, to consider whether the line should be kept in its present place or carried further.

It is worth noting that this is such a case that the application of Judge LEARNED HAND's favorite piepowder court principle (*Kilpatrick* v. *Texas & P. Rwy. Co.*, 166 F. 2d 788, 791) or the balancing of the conveniences of the litigants (*International Shoe Co.* v. *Washington*, 326 U. S. 310) will not favor the plaintiff but will instead indicate that the action should not have been brought here in the first place. The case involves a contract of carriage which was executed and performed entirely without this country and wholly across the seas. The bill of lading under which the cargo involved in this action was carried contained the following provision, evidencing the intention of the parties not to import into our jurisdiction any controversies which might thereafter arise between them: " JURISDICTION. The contract evidenced by this Bill of Lading shall be governed by English law and disputes determined in Great Britain (or, at the option of the Carrier, at the port of destination) according to English law to the exclusion of the jurisdiction of the courts of any other country."

I find that the defendant was not present within the jurisdiction when the summons was served upon it on November 5, 1951, and I recommend that the service be quashed.

(On motion to confirm report, June 2, 1952.)

RIVERS, J. The motion to confirm the report of the referee is granted and his report is confirmed on his opinion, which is adopted as the opinion of the court. The motion to vacate service of the summons and complaint upon the defendant is granted. The action is dismissed for lack of jurisdiction of the defendant.