Gail SHAWE, an infant by Annette Shawe and Earle K. Shawe, and Earle K. Shawe, Plaintiffs,

v.

WENDY WILSON, INC., a Division of Lewis Frimel Co., and Jaftex Corporation, Defendants.

JAFTEX CORPORATION, Third Party Plaintiff,

v.

RANDOLPH MILLS, INC., and Iselin-Jefferson Co., Inc., Third Party Defendants.

United States District Court
S. D. New York.
March 11, 1959.

Zelenko & Elkind, New York City, for plaintiffs.

Richard Formidoni, New York City, for defendant and third party plaintiff Jaftex Corp.

Mendes & Mount, New York City, appearing specially for third party defendant Randolph Mills, Inc., John J. Cullen, New York City, of counsel.

DIMOCK, District Judge.

Third party defendant, Randolph Mills, Inc., hereinafter Randolph, moves to vacate the service upon it of the third party summons and complaint on the ground that it is a North Carolina corporation and that it is not doing business in New York.

Plaintiffs, citizens of Maryland, bring this action based on diversity of citizen-

ship against defendant New York corporations to recover damages for personal injuries allegedly sustained by infant plaintiff at Reistertown, Maryland, when a portion of a pajama outfit which she was wearing allegedly "went up in flames". It is alleged that the pajamas were manufactured by defendant Wendy Wilson, Inc., a division of Lewis Frimel Co., out of "fabric converted and manufactured by defendant Jaftex Corporation".

Defendant Jaftex Corporation served a third party complaint on third party defendants Iselin-Jefferson Co., Inc., hereinafter Iselin-Jefferson, a New York corporation, and Randolph, alleging that the cloth used in the manufacture of the pajama outfit "was sold and/or converted and/or manufactured by third party defendants" and that the cloth was purchased from third party defendants each acting for itself or on behalf of the other. It is claimed that, by reason of the sale to Jaftex, Randolph is liable over for any recovery had against Jaftex. Service upon third party defendants was attempted by a Deputy United States Marshal by delivering two copies of the summons and complaint in New York to a named individual "Asst. Treasurer for Iselin-Jefferson Co., Inc., & as selling agent for Randolph Mills, Inc."

■ It is the contention of third party plaintiff that third party defendant Randolph does business in New York by, and at the premises of, third party defendant Iselin-Jefferson.

An affiant for Randolph swears that in New York Randolph is not authorized to do business, has not filed a certificate with the Secretary of State, does not have any offices, factories or warehouses, does not maintain books, records or bank accounts, does not own property of any description, and is not listed in any telephone directory or any building directory. This affiant also swears that Iselin-Jefferson "is a selling agent for Randolph Mills, Inc., in the State of New York" and continues, "After the orders are received for the goods through Iselin-Jefferson Co., Inc. we ship the goods according to the order. Invoices are made out at the mill in North Carolina. The sale then becomes an account receivable of Randolph Mills, Inc. This account receivable is sold at a discount to a factoring company. All goods sold by Randolph Mills, Inc. through Iselin-Jefferson Co., Inc. are factored through Iselin-Jefferson Financial Company. In effect, therefore, after the sale is made to a customer and the goods delivered Randolph Mills, Inc. receives payment or credit for the goods from Iselin-Jefferson Financial Company, and Randolph Mills, Inc. no longer has a financial interest in the merchandise."

It is further sworn that "[a]ny orders received for the purchase of its products are subject to the approval of the third party defendant at its place of business in Franklinville, N.C."

An officer of Jaftex Corporation does not controvert the essential allegations in these affidavits other than to say: "Negotiations leading up and orders are handled here in New York, either by telephone or personally. When an agreement is reached Iselin-Jefferson Co., Inc., sends us a written confirmation of the order on its letterhead". From this it is to be inferred that Iselin-Jefferson accepts the orders. An exhibit which is an example of such an acceptance is attached to the affidavit. This affiant also swears that complaints about the merchandise are sent to and taken care of by Iselin-Jefferson and that the only document received from Randolph in connection with a transaction is a "memorandum of goods produced or shipped for our account". He says that the factoring corporation, Iselin-Jefferson Financial Co., Inc., is a subsidiary of Iselin-Jefferson. On the latter's bill head there is a printed legend "This bill is assigned to and payable only in New York Funds to our factors Iselin-Jefferson Financial Company, Inc., P.O.Box 162 New York 18, N.Y. to whom notice must be given of any merchandise returns or claims for shortage or for other grounds."

On any non-technical construction of the English language, one would have to

say that Randolph was doing business in New York through its agent, Iselin-Jefferson. All of Randolph's business with New York purchasers originated with Iselin-Jefferson. Iselin-Jefferson solicited the orders, passed upon the purchasers as credit risks which it would accept, submitted the orders to Randolph and then, by communication in New York with the customer, either accepted or rejected each order. At the instant of acceptance of an order the claim for the purchase price was automatically assigned by Randolph to Iselin-Jefferson Financial Co., Inc., a subsidiary of Iselin-Jefferson, and complaints as to shortages, defects in quality, etc. were thereafter made by the purchasers to Iselin-Jefferson Financial Co., Inc.

If the question as to the validity of the service is to be decided under federal law, there can be no doubt as to its validity. Randolph's operations certainly established sufficient contacts or ties with the Southern District of New York to make it reasonable and just, according to our traditional conception of fair play and substantial justice, to permit the District Court for the District of New York to enforce the obligations which Randolph has incurred here. International Shoe Co. v. Washington, 326 U.S. 310, 320, 66 S.Ct. 154, 90 L.Ed. 95.

If, on the other hand, the law of the State of New York must be applied, the service must be held invalid. Where, as here, the foreign corporation is represented within the jurisdiction only by a person or corporation who sells on commission as part of his or its general business of acting for similarly situated primary sellers, the New York courts disclaim jurisdiction. Fried v. Lakeland Hide & Leather Co., Sup.Ct., Sp.Term, N.Y.County, 14 Misc.2d 208, 157 N.Y.S.2d 633; Gertenstein v. Peninsular, etc., Navigation Co., City Court, Special Term, New York County, 202 Misc. 838, 841–842, 113 N.Y.S.2d 360; New York Automatic Canteen Corp. v. Keppel & Ruof, Inc., City Court, Special Term, New York County, 195 Misc. 526, 528–529, 90 N.Y.S.2d 454. In view of the factoring operations undertaken for Randolph in the case at bar it might plausibly be argued that enough was added to the mere status of sales representative to qualify under the restrictive New York rule. There is here, however, a consideration which cuts the other way and seems to me to be determinative. That is the fact that the Iselin-Jefferson organization had a veto power over each order because of its purchase of each account receivable. The position of the Iselin-Jefferson organization was thus even farther from that of the conventional agent than is the position of an independent sales agent who sells on commission.

■ The result of the foregoing is that the validity of the service here involved depends upon the answer to the question whether federal or state law should be applied. I have come to the conclusion that, under the doctrine of Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, the state law must be applied.

The courts have been admonished by high authority against a technical application of the principle of Erie Railroad Co. v. Tompkins. Guaranty Trust Co. v. York, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079. The purpose of the decision was to give as nearly as might be the same rights to diversity litigants in the federal court as they would have in the courts of the state where the federal court sits. It will not do merely to say that, in diversity cases, state substantive law and federal procedural law must be applied. If, as a result of so-called procedural law, a plaintiff is barred from recovery in the state courts, the application of the rule of Erie Railroad Co. v. Tompkins prohibits recovery in the federal courts on the same claim. That is exactly the situation we have here. Jaftex could not recover in the state courts on its claim against Randolph. That makes the law for the federal court.

One of the features of the old dispensation that many thought scandalous was this very disparity between the law of the State of New York and the federal law as to the amenability of foreign

corporations to suit. Strangely enough, in the old days the situation was precisely reversed and the law of the State of New York was liberal in permitting service upon foreign corporations and the law of the federal courts strict. See Grant v. Cananea Consol. Copper Co., 189 N.Y. 241, 249, 82 N.E. 191. The result of this was that, whenever suit was brought in the state court against a foreign corporation whose amenability to service was dubious, the corporation would remove the case to the federal court and then, citing Goldey v. Morning News, 156 U.S. 518, 15 S.Ct. 559, 39 L.Ed. 517, would move—usually successfully—to set aside the service. In such a case the plaintiff's right of recovery would hang on the answer to the question whether there was diversity of citizenship between the plaintiff and the foreign corporation. Though this might depend upon a difference in what is usually classified as procedural law, the result was just as irrational as the result of a difference in substantive law in the celebrated case of Black & White Taxicab Co. v. Brown & Yellow Taxicab Co., 276 U.S. 518, 48 S.Ct. 404, 72 L.Ed. 681, which did so much to bring about the adoption of the rule of Erie Railroad Co. v. Tompkins.

▮ The law in this Circuit has already gone as far as the adoption of the principle that, where the case is brought against the foreign corporation in the state court and then removed on diversity grounds to the federal court, the state law must be applied. Bomze v. Nardis Sportswear, 2 Cir., 165 F.2d 33. See also Ultra Sucro v. Illinois Water Treatment Co., D.C.S.D.N.Y., 146 F. Supp. 393. This supplies one of the reasons for applying state law in diversity cases like this which have been originally brought in the federal court. I cannot believe that the determination of the plaintiffs' right of recovery must hang upon the logically irrelevant factor whether the diversity case was first brought in the state court or in the federal court.

It is true that federal decisions on amenability to suit have been cited in this Circuit in diversity cases, French v. Gibbs Corporation, 2 Cir., 189 F.2d 787; Latimer v. S/A Industrias Reunidas F. Matarazzo, 2 Cir., 175 F.2d 184, but there is no express holding by the Court of Appeals of this Circuit that federal law applies. Four cases in the District Court have, however, reached that result: Satterfield v. Lehigh Valley Railroad Co., D.C., 128 F.Supp. 669; Anderson v. British Overseas Airways Corp., D.C., 144 F. Supp. 543, 546; Napelbaum v. Atlantic Greyhound Corporation, D.C., 171 F. Supp. 547; Clifton Products, Inc. v. American Universal Insurance Co., D.C., 169 F.Supp. 842; and two others have dicta approving that view: General Electric Co. v. Masters Mail Order Co., D.C., 122 F.Supp. 797; Nugey v. Paul-Lewis Laboratories, D.C., 132 F.Supp. 448.

In array against these District Court cases are decisions of the Courts of Appeals in the First, Third, Fifth, Seventh and Tenth Circuits. Pulson v. American Rolling Mill Co., 1 Cir., 170 F.2d 193; Partin v. Michaels Art Bronze Co., 3 Cir., 202 F.2d 541; Albritton v. General Factors Corp., 5 Cir., 201 F.2d 138; Canvas Fabricators v. William E. Hooper & Sons. Co., 7 Cir., 199 F.2d 485; Steinway v. Majestic Amusement Co., 10 Cir., 179 F.2d 681, 18 A.L.R.2d 179. With great reluctance I am constrained to depart from the precedents in this District and to follow the Courts of Appeals in those five circuits.

Motion to vacate service and dismiss the third party complaint is granted.

So ordered.