282 F.2d 508
 JAFTEX CORPORATION, Third-Party Plaintiff-Appellant,
v.
RANDOLPH MILLS, INC., Third-Party Defendant-Appellee.
Gail SHAWE, an infant, by Annette Shawe and Earle K. Shawe,
and Early K. Shawe, Plaintiffs,
v.
WENDY WILSON, INC., a Division of Lewis Frimel Co., and
Jaftex Corporation, Defendants.
 No. 346, Docket 26201.
 United States Court of Appeals Second Circuit.
 Argued June 8, 1960.
Decided Aug. 22, 1960.
 
 Philip J. O'Brien, Jr., New York City (Philip J. O'Brien, Sr., Richard Formidoni, and John G. Coleman, New York City, on the brief), for Jaftex Corp., third-party plaintiff-appellant.
 Norman C. Mendes, of Mendes & Mount, New York City, for Randolph Mills, Inc., third-party defendant-appellee.
 Before LUMBARD, Chief Judge, and CLARK and FRIENDLY, Circuit Judges.
 CLARK, Circuit Judge.
 
 
 1
 The question presented on this appeal is the validity of service of process of a third-party complaint upon the New York agent of the third-party defendant, Randolph Mills, Inc., a North Carolina corporation. The original diversity action brought by plaintiffs, citizens of Maryland, against defendant New York corporations sought damages for personal injuries claimed to have been sustained by the infant plaintiff when a portion of a pajama outfit she was wearing 'went up in flames.' It is alleged that defendant Wendy Wilson, Inc., manufactured the pajamas out of fabrics converted and manufactured by defendant Jaftex Corporation. Thereafter Jaftex sought to implead the ultimate manufacturer, Randolph Mills, claiming that by reason of the latter's negligence and on its sale of the cloth to Jaftex it became liable over for any amounts which Jaftex might be required to pay plaintiffs. Service was made upon an officer of Iselin-Jefferson Co.-- also named a third-party defendant-- for itself and as 'selling agent' for Randolph Mills. Randolph Mills moved to vacate the service and dismiss the third-party complaint for lack of valid service, and the district court, per Dimock, J., granted the motion in a detailed opinion, Shawe v. Wendy Wilson, Inc., D.C.S.D.N.Y., 171 F.Supp. 117. After an attempted appeal was dismissed by us, the district court reframed its order to include the finding required for an interlocutory appeal under 28 U.S.C. 1292(b), and thereafter we granted the necessary appeal. Hence the matter is now before us on the issue framed below.[1]
 
 
 2
 The activities of Iselin-Jefferson Co. on behalf of Randolph Mills in New York were set forth in affidavits of corporate officers presented by the parties. From these Judge Dimock concluded that Randolph Mills was doing business in New York through this agent sufficient so that there could be no doubt of the validity of the service under federal law, but that the result must be otherwise under New York law. Then he ruled that under the doctrine of Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487, the state law must be applied. Acknowledgeing a conflict in the cases, with the views of his colleagues being generally opposed, he yet thought the precedents following state law the weightier; additionally, applying Guaranty Trust Co. of New York v. York, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079, 160 A.L.R. 1231, he held that if as a result of even procedural law, so-called, a plaintiff is barred from recovery in the state courts, application of the Erie principle bars recovery in the federal courts on the same claim. And he held that the situation here, with Jaftex unable to recover in the state courts on its claim against Randolph Mills, 'makes the law for the federal courts.'
 
 
 3
 It is our conclusion that the service was valid under either New York or federal law. Neither in our decisions nor in those of the New York Court of Appeals is there an admitted or defined distinction; this has to be found in the nuances of meaning read between the lines of judicial opinions. In fact the learned judge below found that in an earlier day the state rule tended to be more liberal in permitting service upon foreign corporations than was the federal rule. It seems to have been agreed that the appointment of a mere agent to solicit orders for the foreign corporation did not constitute doing business in the state; but New York early ruled that a settled and continuous relation of this kind might be adequate. Tauza v. Susquehanna Coal Co., 220 N.Y. 259, 115 N.E. 915. The test appeared then to be a quantitative one depending upon the number of contracts had within the state; but L. Hand, J., led a revolt, bringing in the concept of reasonableness into holding a foreign corporation to local service. Hutchinson v. Chase & Gilbert, 2 Cir., 45 F.2d 139. This was followed by the presently leading case of International Shoe Co. v. State of Washington, Office of Unemployment Compensation and Placement, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95, 161 A.L.R. 1057, applying substantially a balancing of interests, referred to as the interest test. The furthest reach of the doctrine is apparently McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223, applying to insurance companies, while Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283, by a divided court shows a moderate retreat. All this has been often discussed by text writers, as, e.g., Comment, Developments in the Law-- State-Court Jurisdiction, 73 Harv.L.Rev. 909-933 (1960); Kurland, The Supreme Court, the Due Process Clause and the In Personam Jurisdiction of State Courts, 25 U. of Chi.L.Rev. 569 (1958); Reese, Judicial Jurisdiction over Non-Residents; The Impact of McGee v. International Life Insurance Company, 13 The Record 139 (1958); and other articles cited below.
 
 
 4
 This background of law on the territorial reach of service has bearing upon both federal and state rules which have developed along parallel lines, although the former is subject only to Congressional policy, while the latter has to satisfy constitutional requirements of due process. It seems to be agreed that solicitation of business alone is not enough to constitute presence in the state. Miller v. Surf Properties, 4 N.Y.2d 475, 176 N.Y.S.2d 318, 151 N.E.2d 874; MacInnes v. Fontainebleau Hotel Corp., 2 Cir., 257 F.2d 832. Yet comparatively little more is required where the business is substantial and continuous. Elish v. St. Louis Southwestern Ry. Co., 305 N.Y. 267, 112 N.E.2d 842, reargument denied 305 N.Y. 824, 113 N.E.2d 561; Sterling Novelty Corp. v. Frank & Hirsch Distributing Co., 299 N.Y. 208, 86 N.E.2d 564, 12 A.L.R.2d 1435; Melvin Pine & Co. v. McConnell, 298 N.Y. 27, 80 N.E.2d 137, affirming 273 App. Div. 218, 76 N.Y.S.2d 279, 10 A.L.R.2d 194; Jacobowitz v. Thomson, 2 Cir., 141 F.2d 72, 75; Bomze v. Nardis Sportswear, Inc., 2 Cir., 165 F.2d 33, 37; Schutt v. Commercial Travelers Mut. Acc. Ass'n of America, 2 Cir., 229 F.2d 158, certiorari denied Commercial Travelers Mut. Acc. Ass'n of America v. Schutt, 351 U.S. 940, 76 S.Ct. 836, 100 L.Ed. 1466. If conceivably there are small differences between state and federal law because New York may not yet have exhausted its entire constitutional power, as presently defined, yet these become of little moment, since Randolph Mills' contracts in the present case go far beyond the minimum as defined under either rule.
 
 
 5
 It is true that Iselin-Jefferson Co. was an agent soliciting business for Randolph Mills (as for others also) on a commission basis and that Randolph Mills had a formal right to decline contracts of purchase submitted to it. But against this was the extent of activity Iselin-Jefferson had carried on in New York for Randolph Mills regularly and continuously for more than six years. It took orders and processed them for Randolph Mills; it received and acted upon, by investigation, response, and otherwise, all complaints; and it provided the money at once for its principal by factorizing the contracts through its own subsidiary. Moreover, the claim against Randolph Mills arises out of these very activities conducted by Iselin-Jefferson. As the district court succinctly says, D.C.S.D. N.Y., 171 F.Supp. 117, 118-119:
 
 
 6
 'On any non-technical construction of the English language, one would have to say that Randolph was doing business in New York through its agent, Iselin-Jefferson. All of Randolph's business with New York purchasers originated with Iselin-Jefferson. Iselin-Jefferson solicited the orders, passed upon the purchasers as credit risks which it would accept, submitted the orders to Randolph and then, by communication in New York with the customer, either accepted or rejected each order. At the instant of acceptance of an order the claim for the purchase price was automatically assigned by Randolph to Iselin-Jefferson Financial Co., Inc., a subsidiary of Iselin-Jefferson, and complaints as to shortages, defects in quality, etc. were thereafter made by the purchasers to Iselin-Jefferson Financial Co., Inc.'
 
 
 7
 So the court concludes that there was adequate service on federal principles. But then it registers doubt under the New York rule, though stating: 'In view of the factoring operations undertaken for Randolph in the case at bar it might plausibly be argued that enough was added to the mere status of sales representative to qualify under the restrictive New York rule.' But it finds a determinative fact to the contrary in that 'the Iselin-Jefferson organization had a veto power over each order because of its purchase of each account receivable.' 171 F.Supp. 117, 119. This is not clear to us, nor is it made clear by the record. Presumably Iselin-Jefferson could decline to factorize an account from a poor credit risk; but this possible measure of independence does not measurably reduce Randolph Mills' New York contacts through Iselin-Jefferson and may even be thought to round out and complete them by placing Randolph Mills' control of its local credit relations also in New York.
 
 
 8
 Since in our view the service is valid in any event, we perhaps might leave the question of governing power undecided. But in view of the very great confusion attending this subject, notably in the Southern District of New York, and against the possibility that this case may go higher, it seems incumbent upon us to decide this further issue. Two of the federal rules are pertinent, though it must be noted that they deal with the manner of service upon corporate defendants, rather than with their amenability to process. F.R. 4(d) (3) provides for personal service upon a foreign corporation by delivering a copy of the summons and complaint to 'an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process.' And F.R. 4(d)(7) provides that service according to the law of the state in which the service is made shall also be sufficient. Thus if Randolph Mills is suable below, the manner of service had was sufficient under either rule.
 
 
 9
 As we shall note below, the Supreme Court has not passed upon the application of the Erie principle to this particular problem. It is our conclusion in the absence of definitive direction that the policy we here deal with is to be considered so much a part of the make-up of a federal court that it is not lightly to be superseded, and the settled policy that federal courts should apply state substantive law in diversity cases does not go to the extent of requiring the contrary. The requirement of personal service in the district (except for the special exceptions made by Congress) is an old one going back to the Judiciary Act of 1789, 11, 1 Stat. 79, and continued in Rev.Stat. 739, Judicial Code 51, and the former 28 U.S.C. 112. During all this period the requirements as to service and venue were treated together, a not unnatural course in view of their close connection. With the revision of Title 28, United States Code, the provisions were separated, the venue requirements going to 28 U.S.C. 1391[2] and the service requirements going to 28 U.S.C. 1693. The latter act seems particularly important as bringing the original requirements of 1789 down into modern law.[3] At any rate the requirement has been steadily applied and as yet has been changed by Congress and the Rules in only limited and particular ways.[4] See Robertson v. Railroad Labor Board, 268 U.S. 619, 622, 45 S.Ct. 621, 69 L.Ed. 1119, also Toland v. Sprague, 12 Pet. 300, 37 U.S. 300, 330, 9 L.Ed. 1093; Big Vein Coal Co. of West Virginia v. Read, 229 U.S. 31, 33 S.Ct. 694, 57 L.Ed. 1053; Ex parte Railway Co., 103 U.S. 794, 26 L.Ed. 461; Rorick v. Devon Syndicate, 307 U.S. 299, 310, 59 S.Ct. 877, 83 L.Ed. 1303. Wholly consistent and apparently required by this background is the parallel condition that a corporation must be 'present,' i.e., doing business, within the district in order to be subject to suit there. Philadelphia & Reading Ry. Co. v. McKibbin, 243 U.S. 264, 37 S.Ct. 280, 61 L.Ed. 710; James-Dickinson Farm Mortgage Co. v. Harry, 273 U.S. 119, 122, 47 S.Ct. 308, 71 L.Ed. 569; cases and other authorities cited in 2 Moore's Federal Practice 969 (2d Ed. 1948).
 
 
 10
 This evinces a deliberate and long-avowed federal practice with reference to the basis of federal judicial action. Thus it seems to us without the Erie principle for the reasons we advanced recently in Iovino v. Waterson, 2 Cir., 274 F.2d 41, certiorari denied Carlin v. Iovino, 362 U.S. 949, 80 S.Ct. 860, 4 L.Ed.2d 867, with reference to the substitution of parties. Indeed one federal judge has already found an answer by the Supreme Court to this very problem. See K. Shapiro, Inc. v. New York Cent. R. Co., D.C.E.D.Mich., 152 F.Supp. 722, commenting upon the brief decision in Riverbank Laboratories v. Hardwood Products Corp., 350 U.S. 1003, 76 S.Ct. 648, 100 L.Ed. 866, reversing 7 Cir., 220 F.2d 465, to uphold service upon a foreign corporation. But the Court's opinion is too brief and cryptic to make such a conclusion assured. See Note, Federal and State Precedents on Doing Business: Jurisdiction over Foreign Corporations under Erie, 67 Yale L.J. 1094, 1097, 1098 (1958); Kurland, Mr. Justice Frankfurter, the Supreme Court and the Erie Doctrine in Diversity Cases, 61 Yale L.J. 187, 211-212, n. 120 (1957).
 
 
 11
 Perhaps a surer basis is the decision in Byrd v. Blue Ridge Rural Elec. Co-op., Inc., 356 U.S. 525, 537-540, 78 S.Ct. 893, 900, 2 L.Ed.2d 953, where the Court in a diversity case upheld federal trial by jury against a state policy of determination of a certain defense (based on the state Workmen's Compensation Act) by the judge. The Court conceded that 'were 'outcome' the only consideration,' a strong case for following state practice would appear. Nevertheless it found affirmative countervailing considerations. 'The federal system is an independent system for administering justice to litigants who properly invoke its jurisdiction.' Then continuing, it said, 'It cannot be gainsaid that there is a strong federal policy against allowing state rules to disrupt the judge-jury relationship in the federal courts.' And it relied on Herron v. Southern Pac. Co., 283 U.S. 91, 51 S.Ct. 383, 75 L.Ed. 857, as holding that even state statutes or constitutional provisions 'could not disrupt or alter the essential character or function of a federal court.' Finally it held doubtful that a federal trial by jury supervised by the greater powers of the federal judge would necessarily have a substantial effect upon the outcome of the litigation. See Comment, The Supreme Court, 1957 Term, 72 Harv.L.Rev. 77, 147-150 (1958), for the significant development this case represents in making more flexible the outcome-determinative test for the application of the Erie doctrine.
 
 
 12
 We think these principles soundly applicable here. The federal and state rules are certainly not so mutually at odds that the federal decision will seriously damage state polity. On the other hand, so long as Congress opens the national courts to cases 'between citizens of different States,' U.S.Const. Art. III, 2, it would seem that they are entitled to the essentials of a trial according to federal standards. See Biggs, C.J., concurring in Partin v. Michaels Art Bronze Co., 3 Cir., 202 F.2d 541, 545; Barrow S.S. Co. v. Kane, 170 U.S. 100, 111, 18 S.Ct. 526, 42 L.Ed. 964. The opposite view proves too much; it would mean, inter alia, that a federal litigant must be deprived in various parts of the country of the remedy of the declaratory judgment or of federal interpleader and that he cannot have the benefit of transfer to a more convenient forum. See 67 Yale L.J. 1094, n. 3 (1958). On the opposite side of the coin he may, contrary to present federal policy, be subjected to a labor injunction or to suit in some foreign district where his car has been attached or a debt due him garnisheed. Ibid.; Report of Proposed Amendments, October 1955, 10-15. Further, the question here in reality is which federal court Jaftex may enter, not as to its total exclusion. For it can surely press its claim in Randolph Mills' home district in North Carolina in a court formed in the same way and subject to the same procedural rules as the court below. The learned judge's suggestion that Jaftex could not recover in the federal courts because he could not do so in the state courts misses this point and the essential uniformity of procedure throughout the national court system. There is thus less or no reason to speculate on the outcome between the two essentially similar courts.
 
 
 13
 Actually this point appears to have been generally overlooked. Since the practical result of the holding below is thus only that Randolph Mills must be sued separately in North Carolina, rather than with the other defendants here, it follows that the parties can have no interest whatsoever in the possible outcome of suit in a New York court and the outcome-determinative test is quite anomalous. Commentators, noting the present stress upon merely state-wide uniformity of decision, have regretted the accompanying 'degradation of federal justice' and the 'triviality of this fear of forum-shopping' (which was but a minor consideration in the original Erie opinion) and have emphasized the deeper considerations leading litigants hopefully to seek a 'juster justice' in the federal courts. So they properly ask whether there is anything in this which is an offense to the ideals of federalism. See Hart, The Relations between State and Federal Law, 54 Col.L.Rev. 489, 510-513 (1954); Hill, The Erie Doctrine and The Constitution, 53 Nw.U.L.Rev. 427, 437, 449-451, 541 et seq. (1958). The problem is obviously complex and does not invariably respond to the outcome-determinative simplification. Among pertinent questions are always those as to the real meaning and purpose of the state policy with respect to foreign corporations, which may range from conditions imposed and enforceable only in the state courts to burdens upon doing business which are properly applied also in a federal court, as in Woods v. Interstate Realty Co., 337 U.S. 535, 69 S.Ct. 1235, 93 L.Ed. 1524. Thus were there actually a New York 'door-closing' statute as to foreign corporations, there would be no quick a priori answer as to its effect federalwise. It could represent a substantive state policy as to foreign corporate activity and thus govern. But if it went so far as to try to close the federal door to litigants as to matters having no proper connection with the state, it would run into constitutional difficulties. Terral v. Burke Const. Co., 257 U.S. 529, 42 S.Ct. 188, 66 L.Ed. 352, 21 A.L.R. 186. Here in any event there is nothing to offend New York policy, since no issue of substantive law arises and the choice of New York over North Carolina for a forum is for the obvious procedural advantage afforded by federal impleader of settling all contentions in a single lawsuit.
 
 
 14
 There are no Supreme Court cases forbidding this result. In fact, the early and often-cited case of Barrow S.S. Co. v. Kane, supra, 170 U.S. 100, 18 S.Ct. 526, 42 L.Ed. 964, fully supports it. There it was held that in a suit in the federal court in New York by a New Jersey citizen for an assault upon him in Ireland, service upon the foreign steamship corporation was valid under federal law, even though New York had not authorized such suits to be brought in its own courts. Our own case of Willis v. Weil Pump Co., 2 Cir., 222 F.2d 261, is similar. Cited as opposed are the more recent decisions of Angel v. Bullington, 330 U.S. 183, 191-192, 67 S.Ct. 657, 91 L.Ed. 832, and Woods v. Interstate Realty Co., supra, 337 U.S. 535, 69 S.Ct. 1235, 93 L.Ed. 1524; but in both these cases a clear and precise state policy would have been frustrated by permitting suit in the federal forum.[5] In the lower federal courts there is a sharp diversity of view. Actually we have ruled in accordance with the views now stated, albeit without lengthy discussion.[6] In the Southern District of New York the prevailing view has been opposed to the conclusion below.[7] The text writers are divided.[8] Judge Dimock cites some decisions of courts of appeals as agreeing with the view he has espoused; but for the most part these are not decisive precedents, since they are only necessary interpretations of state statutes providing for special forms of service, as Judge Cashin pointed out in Nash-Ringel, Inc. v. Amana Refrigeration, Inc., D.C.S.D.N.Y., 172 F.Supp. 524.[9] In the leading case for the state view, Partin v. Michaels Art Bronze Co., supra, 3 Cir., 202 F.2d 541, 545, Chief Judge Biggs concurred only because he thought the service inadequate federalwise; and he expressed the view of the constitutional aspects of a federal trial in diversity cases in language with which we are in agreement. It is significant that later for almost the same panel, in recognizing for federal actions a state statute providing for service on a foreign corporation by service on the Secretary of the Commonwealth, he relied not on the Erie principle, but on F.R. 4(d)(7). Florio v. Powder Power Tool Corp., 3 Cir., 248 F.2d 367.
 
 
 15
 Perhaps we should note here a suggestion not developed in the precedents or by counsel, but advanced at length in the note cited above, 67 Yale L.J. 1094, 1105-1109 (1958), namely, that issues of the type here involved should turn upon the presence or absence of explicit congressional regulation. This is to accord greater force to legislative than to judicial determination of the federal ambit. The assumed distinction is without specific support in the cases; at most there is an occasional attempt to bolster particular procedural rules by noting their backing in congressional authorization. See Iovino v. Waterson, supra, 2 Cir., 274 F.2d 41, 48, certiorari denied Carlin v. Iovino, 362 U.S. 949, 80 S.Ct. 860, 4 L.Ed.2d 867, upholding F.R. 25(a)(1) (substitution of parties), and D'Onofrio Const. Co. v. Recon Co., 1 Cir., 255 F.2d 904, 910, upholding F.R. 14 (impleader), in diversity cases.[10] Actually, however, it runs counter to the rationale of Bernhardt v. Polygraphic Co. of America, 350 U.S. 198, 202-203, 205-212, 76 S.Ct. 273, 100 L.Ed. 199. See Hill, The Erie Doctrine and the Constitution, 53 Nw.U.L.Rev. 427, 436-437 (1958).
 
 
 16
 In any event the suggestion is hardly useful as a solvent for the problem of determining the scope and extent of the Erie policy. Thus as an independent test it seems both unsound and practically inoperable. Flouting of state law is surely as direct when made by federal statutes outside the proper federal areas as by any judicial decision; the suggestion therefore directly undercuts the Erie policy itself. And, since federal law naturally consists of statutes and decisions together, that is, of statutes as interpreted by the courts, there is both no legal basis for, and no practical means of, separating them. Thus in this case we think it clear that the federal principle of personal service in the district goes back to the statute creating the federal courts which is expressly reiterated in 28 U.S.C. 1693; the mere fact that pre-Erie cases have interpreted and defined the principle is entirely natural and legal and does not hide its statutory basis. As a matter of fact, the federal civil rules themselves accept it and build upon it, both in the rule, F.R. 4(d), dealing with personal service and in the rule, F.R. 4(f), extending the territorial limits of effective service, as well as in the proposed amendments extending these provisions, as set forth in Report of Proposed Amendments, October 1955, 10-15. These rules and proposals of course apply the statutory and decisional law we have recited, and do not make sense without it. Thus the suggestion advanced does not accord with basic views of policy and will not reconcile the authorities or ease the burden of decision in actual cases. And it is irrelevant here in view of the statutory basis for the principle we are enforcing.
 
 
 17
 Hence our conclusion is that the question whether a foreign corporation is present in a district to permit of service of process upon it is one of federal law governing the procedure of the United States courts and is to be determined accordingly. So concluding, we find it unnecessary to consider Jaftex's additional claim of federal jurisdiction based upon an asserted violation of the Flammable Fabrics Act of 1953, 15 U.S.C. 1191 et seq.
 
 
 18
 Reversed and remanded.
 
 
 19
 FRIENDLY, Circuit Judge (concurring).
 
 
 20
 I concur in the judgment of reversal and in the portion of the Court's opinion which holds that the activities performed by Iselin-Jefferson Co. in New York on behalf of Randolph Mills suffice to subject Randolph Mills to suit under New York law. However, I cannot join in the alternative ground of the opinion, namely, that if Randolph Mills were not sufficiently active in New York to subject it to suit in the New York courts, it may nevertheless be summoned before a federal court sitting in New York if it is doing enough in New York so that such an assertion of power over it would not violate due process. I put the Court's alternative holding that way for, despite the references to a federal standard of corporate presence, I know of no such federal standard except the constitutional one. On this issue I find myself in agreement with the view that has been most fully developed by Judge Goodrich, on behalf of Judge Hastie and himself, Chief Judge Biggs disagreeing, in Partin v. Michaels Art Bronze Co., 3 Cir., 1953, 202 F.2d 541, and that is followed also in the First, Fifth and Seventh Circuits,[1] Pulson v. American Rolling Mill Co., 1 Cir., 1948, 170 F.2d 193; Lone Star Package Car Co. v. Baltimore & Ohio R. Co., 5 Cir., 1954, 212 F.2d 147; Canvas Fabricators, Inc. v. William E. Hooper & Sons Co., 7 Cir., 1952, 199 F.2d 485, and Riverbank Laboratories v. Hardwood Products Corp., 7 Cir., 1955, 220 F.2d 465, reversed per curiam 1956, 350 U.S. 1003, 76 S.Ct. 648, 100 L.Ed. 866, as to which see Note, 67 Yale L.J. 1094, 1097-98, fns. 13 and 14. This is that, under the Federal statutes and Rules of Civiil Procedure as they now stand, federal courts sitting in a state may not exercise jurisdiction over a foreign corporation unless the state has 'provided for bringing the foreign corporation into its courts under the circumstances of the case presented,' 170 F.2d at page 194, save when Congress itself has made provision to that end, e.g., 15 U.S.C.A. 22, see United States v. Scophony Corp. of America, 1948, 333 U.S. 795, 68 S.Ct. 855, 92 L.Ed. 1091.[2]
 
 
 21
 Discussion necessarily begins with the great cases of Erie R.R. v. Tompkins, 1938, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, and Guaranty Trust Co. of New York v. York, 1945, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079, familiar though they be. The former tells us, 304 U.S. at page 78, 58 S.Ct. at page 822, that 'Except in matters governed by the Federal Constitution or by acts of Congress, the law to be applied in any case is the law of the state.' The latter adds that this mandate is not confined to what lawyers would call 'substance' rather than 'procedure'; it also supplies the significant commentary that Erie 'overruled a particular way of looking at law' wherein 'federal courts deemed themselves free to ascertain what Reason, and therefore Law, required wholly independent of authoritatively declared State law * * *' 326 U.S. at pages 101, 102, 65 S.Ct. at page 1466. The lesson of these decisions and others, as I understand it, is that on any matters having a substantial effect on the outcome of litigation, as distinguished from the ways of conducting judicial business, federal courts must look to the law of the state where they sit, save in fields, such as admiralty, see Levinson v. Deupree, 1953, 345 U.S. 648, 73 S.Ct. 914, 97 L.Ed. 1319, that are distinctively federal or where the Constitution,[3] treaties, federal statutes, or rules having the force of statute show, either explicitly or implicitly, an intent that the federal courts are 'to fashion federal law * * *' Textile Workers Union of America v. Lincoln Mills, 1957, 353 U.S. 448, 457, 77 S.Ct. 912, 918, 923, 1 L.Ed.2d 972. Whether a foreign corporation has taken such action in a state as to make it subject to suit there is not a mere matter of judicial administration; if anything is 'outcome determinative,' that is, and none the less so because the corporation might be subject to suit in a federal court in its own state. Nevertheless, in my view, this matter falls in the zone where, subject to the due process guarantee of the Fifth Amendment, Congress may validly direct, or authorize the Supreme Court to direct, the federal courts to fashion their own standards even in diversity of citizenship cases, as was held with respect to other issues in Sampson v. Channell, 1 Cir., 1940, 110 F.2d 754, 756-757, 128 A.L.R. 394, certiorari denied, 1940, 310 U.S. 650, 60 S.Ct. 1099, 84 L.Ed. 1415; D'Onofrio Construction Company v. Recon Company, 1 Cir., 1958, 255 F.2d 904, 909, 910; Iovino v. Waterson, 2 Cir., 1959, 274 F.2d 41, 48, certiorari denied 1960, 362 U.S. 949, 80 S.Ct. 860, 4 L.Ed.2d 867, and Monarch Ins. Co. of Ohio v. Spach, 5 Cir., 1960, 281 F.2d 401. Valid inferences from Article III and from the 'necessary and proper' clause of Article I, 8, support action by Congress or the rule-making power within this 'twilight zone,' 110 F.2d at pages 756-757, in derogation of state law, even when federal jurisdiction rests solely on diversity of citizenship. The question is whether such a direction has been given as to the subject here at issue; I think it has not been.
 
 
 22
 There is a federal statute, 28 U.S.C. 1391(c), which might be claimed to give precisely such a direction. That section, enacted as part of the 1948 revision of the Judicial Code, says that 'a corporation may be sued in any judicial district in which it is incorporated or licensed to do business or is doing business.' The argument would be that it is for the federal courts to determine what Congress meant by 'is doing business' in 1391(c), and that hence a federal court sitting in the Southern District of New York can bring a foreign corporation before it on the basis of a quantum of activity that the New York courts would find insufficient under state statutes. However, the second step does not follow save by a literalism that would give 1391(c) an effect never contemplated. Section 1391(c) was directed, not to the problem of jurisdiction over the person of a foreign corporation, but to venue, as its presence in a section of the Code entitled 'Venue generally' indicates. Its purpose was to overcome the rule that, in the absence of 'waiver,' see Neirbo Co. v. Bethlehem Shipbuilding Corp., 1939, 308 U.S. 165, 60 S.Ct. 153, 84 L.Ed. 167, the venue statute in effect since 1887 permitted a corporation to be sued only in the district where it had its principal office (or, in diversity litigation, at the plaintiff's residence). See Moore, Commentary on the Judicial Code, pp. 193-94. This rule, announced as early as Shaw v. Quincy Mining Co., 1892, 145 U.S. 444, 450, 12 S.Ct. 935, 36 L.Ed. 768, and reaffirmed as late as Suttle v. Reich Bros. Co., 1948, 333 U.S. 163, 68 S.Ct. 587, 93 L.Ed. 614, had nothing to do with the court's jurisdiction over the person of the corporation; it was simply a rule of venue, as vividly illustrated by Galveston, Harrisburg & San Antonio Railway Co. v. Gonzales, 1894, 151 U.S. 496, 14 S.Ct. 401, 38 L.Ed. 248, where it was successfully invoked by a domestic corporation doing a large business but having its corporate office in another district of the state. The subject is well developed in a Note, Federal and State Precedents on Doing Business: Jurisdiction over Foreign Corporations under Erie, 67 Yale L.J. 1094, 1099, fn. 18 (1958), which points out, inter alia, that to apply the 'doing business' test of 1391(c) to jurisdiction over the defendant might restrict federal jurisdiction, as in a case where a plaintiff, in the district of his own residence, sues a foreign corporation on a claim arising out of acts by the corporation sufficient to meet state and due process jurisdiction requirements but insufficient to constitute 'doing business' for venue purposes and the Neirbo rule is inapplicable. Cf. Olberding v. Illinois Central R.R., 1953, 346 U.S. 338, 74 S.Ct. 83, 98 L.Ed. 39.
 
 
 23
 Earlier versions of the statute give no support to a contrary view. Section 11 of the Judiciary Act of 1789, 1 Stat. 79, continued in Rev.Stat. 739 provided that no civil suit shall be brought against any inhabitant of the United States 'in any other district than that whereof he is an inhabitant, or in which he shall be found at the time of serving the writ. * * *' Early decisions at circuit held that under this a corporation could never be sued in the Federal courts of a state other than that of its incorporation, since it could neither be an inhabitant of nor be found in a state other than its own, Day v. Newark India-Rubber Manufacturing Co., C.C.S.D.N.Y. 1850, 7 Fed.Cas. p. 245, No. 3,685; Pomeroy v. New York & New Haven R.R., C.C.S.D.N.Y.1857, 19 Fed.Cas. p. 965, No. 11,261. When these were overruled in Ex parte Schollenberger, 1878, 96 U.S. 369, 24 L.Ed. 853, it was not on the basis taht federal courts could 'find' foreign corporations in Pennsylvania although the state courts would not, but rather because a Pennsylvania statute had required the corporations to consent to be 'found' there 'by any court of this Commonwealth having jurisdiction of the subject matter' and 'While the Circuit Court may not be technically a court of the Commonwealth, it is a court within it; * * *' See the discussion by Mr. Justice Frankfurter in Neirbo Co. v. Bethlehem Shipbuilding Corp., supra, 308 U.S. at pages 169 ff, 60 S.Ct. at page 155. In 1887 the 'found' language disappeared; from then until 1948, the venue statute, Act of March 3, 1887, c. 373, 24 Stat. 552, as corrected by Act of August 13, 1888, c. 866, 25 Stat. 433; Judicial Code of 1911, 51; and former 28 U.S.C. 112, kequired that suit be brought in the district where the defendant was an 'inhabitant' save that in diversity cases suit could be brought at the 'residence' of either the plaintiff or the defendant. Where venue had to be predicated on the residence of a corporation the requirement was that the chief corporate office be in the district, subject only to the Neirbo waiver rule; the statute neither established nor authorized the federal courts to establish standards of corporate presence, a subject irrelevant to the statutory venue test.
 
 
 24
 Neither do I find anything in the Federal Rules of Civil Procedure to indicate an intention that the federal courts should fashion their own standards of what activities by a foreign corporation subject it to the jurisdiction of a particular district court. Rule 4(d)(3), 28 U.S.C. establishes a manner in which service may be made 'Upon a domestic or foreign corporation or upon a partnership or other unincorporated association which is subject to suit under a common name,' in addition to the provision of Rule 4(d)(7) that service may likewise be made 'in the manner prescribed by the law of the state in which the service is made for the service of summons or other like process upon any such defendant in an action brought in the courts of general jurisdiction of that state.' However, as said in Hart & Wechsler, The Federal Courts and the Federal System, p. 959, 'Rule 4(d)(3) of the Rules of Civil Procedure tells how service of process is to be made upon a corporation which is subject to service; but does not tell when the corporation is so subject,' as the majority seem to agree. The only other Federal Rule in this general area is Fed.R.Civ.Proc. 17(b), relating to 'Capacity to Sue or Be Sued.' After referring the capacity of an individual not acting in a representative capacity to the law of his domicile and that of a corporation to the law of its place of organization, this directs that, with two further exceptions, 'In all other cases capacity to sue or be sued shall be determined by the law of the state in which the district court is held.' Granting that the problem before us is jurisdiction over the person and not capacity, nevertheless Rule 17(b) has some relevance since the reference to the law of the state where the district court sits shows that the framers of the Rules did not think it necessary that there be nationwide uniformity formity as to who may sue or be sued in the federal courts.
 
 
 25
 The only other ground for finding that a federal court may establish a standard as to the circumstances when a foreign corporation may be sued, less rigorous than that set by the state where the court sits, would be if a practice of considering this question as one of federal law had become so well established that it must be deemed to be sanctioned by the Judicial Code or the Federal Rules, even though both are silent on the subject. I cannot find a sufficient basis for the premise.
 
 
 26
 In the beginning-- and exploration of this issue necessarily takes us there-- it was thought, to a considerable extent under the influence of Chief Justice Taney's dictum in Bank of Augusta v. Earle, 1839, 13 Pet. 519, 588, 38 U.S. 519, 588, 10 L.Ed. 274, that a corporation could never be sued outside the state of its incorporation. See Henderson, The Position of Foreign Corporations in American Constitutional Law, pp. 77-80. Then came state statutes providing that foreign corporations transacting business within a state shall be 'deemed' to hold franchises therein. In Warren Manufacturing Co. v. Etna Insurance Co., C.C.D.Conn.1837, 29 Fed.Cas. p. 294, No. 17,206, Mr. Justice Thompson said he would uphold such a statute, Henderson, op. cit., pp. 80-81. This theory, that a state might exercise jurisdiction over foreign corporations because of an implied consent to a state statute providing for service of process as a condition to doing business, was adopted in LaFayette Insurance Co. v. French, 1855, 18 How. 404, 59 U.S. 404, 15 L.Ed. 451. If the amenability of foreign corporations to suit had continued to be based solely on this theory, it could hardly even be contended that the federal courts could interpret the conditions laid down by the state as covering more ground than did the state itself. How long this did continue is debatable; certainly the consent theory still seems to underlie Louisville & Nashville R. Co. v. Chatters, 1929, 279 U.S. 320, 325-326, 49 S.Ct. 329, 73 L.Ed. 711, although the opinion speaks also of 'presence.'
 
 
 27
 Most of the early Supreme Court cases on this subject involved the validity of judgments against foreign corporations by state courts, either directly when reviewed on writ of error or collaterally when sued upon in another state or federal court. The questions in such cases were constitutional questions-- of due process or full faith and credit. Although, when the Supreme Court was confronted with the issue of a foreign corporationhs amenability to suit in a federal court, the Court cited the same decisions and applied the same tests that it had used in cases involving the validity of state judgments, neither Philadelphia & Reading Ry. Co. v. McKibbin, 1917, 243 U.S. 264, 37 S.Ct. 280, 61 L.Ed. 710, nor the three other rather similar opinions of Mr. Justice Brandeis cited in 2 Moore, Federal Practice (2d ed. 1948), p. 969, fn. 1, to which the majority refer, signify to me that the Court thought it was creating a corpus of federal law as to the basis on which foreign corporations might be brought before the district courts. All four cases held the corporation not subject to suit in the federal court; there was nothing to show that the state statutes were not intended to go as far as the Fourteenth Amendment was then thought to permit; and the discussion of 'presence' seems to have been directed to marking the constitutional limits of state action rather than to setting up a distinctive standard applicable in the federal courts regardless of state law. This interpretation is strongly indicated by the fact that two of the decisions, Rosenberg Bros. & Co., Inc. v. Curtis Brown Co., 1923, 260 U.S. 516, 43 S.Ct. 170, 67 L.Ed. 372 and James Dickinson Farm Mortgage Co. v. Harry, 1927, 273 U.S. 119, 47 S.Ct. 308, 71 L.Ed. 569, were cases removed from the state courts in which, on any view, the questions were the applicability of the state statutes under which service had been effected and the constitutionality of the statutes as so applied, see Bomze v. Nardis Sportswear, Inc., 2 Cir., 1948, 165 F.2d 33, 35. More recent cases, such as International Shoe Co. v. State of Washington, 1945, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95; Perkins v. Benguet Consolidated Mining Co., 1952, 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485; McGee v. International Life Ins. Co., 1957, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223, and Hanson v. Denckla, 1958, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283, all involved the validity of state judgments against foreign corporations; the issue was, as stated in the Perkins case, 342 U.S. at page 447, 72 S.Ct. at page 419, 'whether, as a matter of federal due process, the business done' in the state warranted the state's exercise of power.
 
 
 28
 Indeed, as I read Professor Moore, he does not contend that any of the authorities relied upon by the majority support his statement, 'Whether a foreign corporation or other business entity is doing business in a state is a matter of general, not local, law,' 2 Moore, Federal Practice (2d ed. 1948), 969-70, with the solitary exception of Barrow S.S. Co. v. Kane, 1898, 170 U.S. 100, 18 S.Ct. 526, 42 L.Ed. 964, holding that a foreign corporation, admittedly doing a substantial business in New York, was subject to suit in the federal courts by a non-resident whose suit in the state courts would have been barred by a New York 'door-closing' statute. Mr. Justice Gray's opinion in that case is a confusing one, at least to me; I find it hard to tell whether the language as to the inability of the states to impair federal jurisdiction, 170 U.S. at pages 111 and 112-113, 18 S.Ct. at pages 530-531, was addressed to the status of the plaintiff, of the defendant, or of both, or to reconcile the one such passage that does seem clearly to relate to the corporate defendant, 170 U.S. at page 110, 18 S.Ct. at page 529, with the discussion before and after. Be that as it may, I concede that, analytically, the decision lends support to Professor Moore's statement-- on a basis developed, in another connection, by Henderson more than forty years ago, pp. 89-90. However, the decision seems to have had neither predecessors nor progeny. Thirty years later, in Louisville & Nashville R. Co. v. Chatters, supra, 279 U.S. at pages 325-328, 49 S.Ct. at pages 330-331, 332, dealing with a suit begun in the federal court against a railway engaged generally in business within the district, Mr. Justice Stone, writing for a unanimous Court which included Mr. Justice Brandeis, proceeded on the assumption that the railway could be sued only within the terms of its 'consent,' and went through an elaborate analysis to demonstrate that the consent included a suit 'arising out of an obligation incurred within the state although the breach occurred without.'; if Barrow S.S. Co. v. Kane had established that 'presence' was enough for federal jurisdiction regardless of state statutes, all this was supererogation. Moreover, insofar as Barrow S.S. Co. v. Kane held that state 'door-closing' statutes need not be heeded by a federal court in a diversity of citizenship case, it is contrary to what has been said in Angel v. Bullington, 1947, 330 U.S. 183, 192, 67 S.Ct. 657, 91 L.Ed. 832 and held in Woods v. Interstate Realty Co., 1949, 337 U.S. 535, 69 S.Ct. 1235, 93 L.Ed. 1524, see Partin v. Michaels Art Bronze Co., supra, 202 F.2d at pages 542-543, footnote 2. After all this it seems to me too slender a reed on which to rest a departure from the command of Erie R. R. v. Tompkins and Guaranty Trust Co. of New York v. York, in the absence of any indication of Congressional purpose to that end.
 
 
 29
 The issue between my brothers and me would be more clearly posed if New York had a statute stating expressly that a foreign corporation, which engages only in isolated transactions in New York, is not subject even to an action on a claim arising out of those transactions, although International Shoe Co. v. State of Washington, supra, presumably would permit New York to make it so, or that a foreign corporation engaging generally in business in New York is not subject to suit on claims arising out of non-New York business, although Perkins v. Benguet Consolidated Mining Co., supra, allows New York to subject it to such suit. Statutes of this sort would represent legitimate exercise of state policy,[4] and would be constitutional, as another phase of Perkins v. Benguet Consolidated Mining Co., supra, held. I would find it difficult to reconcile a view that the United States District Court may nevertheless hold the corporation 'present,' and therefore subject to its process, in cases thus excluded by New York, with the decisions requiring federal courts, in diversity cases, to apply state statutes closing the courts against plaintiffs, Angel v. Bullington, supra, and Woods v. Interstate Realty Co., supra. For I see no valid distinction between a state statute that a plaintiff may not come through the door and a mandate that a defendant may not be hauled through it.[5] Yet, if a federal court sitting in New York would have to respect such a New York statute, in the absence of a contrary federal legislative direction-- a direction which, it should be emphasized, I think within the power of Congress or the rule-making authority to give, even in diversity cases-- Erie and Guaranty Trust Co., seem to me to teach that the federal courts sitting in a state must likewise respect state decisions also the embodiment of state policy as to what activity will subject a foreign corporation to suit.
 
 
 
 [1]
 The writer dissented from the decision by his brothers granting leave to appeal, stating that he believed it 'unfair to the litigants and unduly burdensome to the court for us now to postpone all action on the main claim for negligence while we attempt to preview the difficult issues of fact and law raised on a fringe issue of possible indemnity over against one of several cited-in defendants.' Even though our present reversal might tend somewhat to vindicate the grant of leave, I still remain of the view that immediate appeal was undesirable and unwise. Obviously we are opening most serious issues better settled after trial of the main action has shown them to be real; and meanwhile that action for damages for an accident in 1955 is at a halt. More lately we have denied leave for immediate appeal from dismissal of such a claim for merely potential indemnity. Luckenbach Steamship Co. v. H. Muehlstein & Co., 2 Cir., 280 F.2d 755. I cannot follow Judge Dimock's view, D.C.S.D.N.Y., 25 F.R.D. 1, 6, that Jaftex must be allowed an immediate appeal or lose all opportunity therefor for 'practical purposes.' Indeed, until recent times, or in many states now, Jaftex could not have had the remedy of impleader in any case
 
 
 [2]
 This separation may have been of doubtful wisdom, as perhaps suggesting conflicts where none would have existed under the proper historical approach. Thus the added subd. (c) to 28 U.S.C. 1391 reads as follows: 'A corporation may be sued in any judicial district in which it is incorporated or licensed to do business or is doing business, and such judicial district shall be regarded as the residence of such corporation for venue purposes.' In terms this is quite applicable also to define the requirements of service of process; present attempts to find a distinction and possible conflict between this provision and service requirements seem therefore antihistorical and perhaps of doubtful wisdom. Compare 67 Yale L.J. 1094, 1099 n. 18 (1958); 69 Harv.L.Rev. 508, 517-519 (1956); Hart & Wechsler, The Federal Courts and the Federal System 960 (1953). The Reviser's Note discussing omission of the word 'found' (in the district) is apparently geared to an earlier draft of the proposed statute
 
 
 [3]
 The statute speaks in terms of civil 'arrest,' thus preserving the wording of the original 11 of the Judiciary Act of 1789
 
 
 [4]
 Such as federal antitrust actions, 15 U.S.C. 22, or federal interpleader, 28 U.S.C. 2361. F.R. 4(f) extended service beyond the district to the territorial limits of the state in which the district court is held, and this was held valid in Mississippi Pub. Corp. v. Murphree, 326 U.S. 438, 445, 446, 66 S.Ct. 242, 246, 90 L.Ed. 185, a case directly in point here because the Court accepted the conclusion that the operation of the rule 'will undoubtedly affect' the rights of litigants, but stressed that it was a rule of procedure relating only to 'the manner and the means' by which a substantive right was enforced. More lately in recommendations not yet passed upon by the Supreme Court, the Advisory Committee has suggested an amendment to F.R. 4(e) to provide for service where attachment or garnishment was adequate therefor under state law, and to F.R. 4(f) to extend service to 100 miles from the place of suit or trial. Report, October 1955, 10-15
 
 
 [5]
 Angel v. Bullington, 330 U.S. 183, 67 S.Ct. 657, 91 L.Ed. 832, involved a statute precluding recovery of a deficiency judgment upon a mortgage foreclosure, while Woods v. Interstate Realty Co., 337 U.S. 535, 69 S.Ct. 1235, 93 L.Ed. 1524, dealt with a statute requiring a foreign corporation doing business in the state to designate an agent for service of process as a prerequisite to maintenance of suit in the state courts
 
 
 [6]
 Jacobowitz v. Thomson, 2 Cir., 141 F.2d 72; Latimer v. S/A Industrias Reunidas F. Matarazzo, 2 Cir., 175 F.2d 184, certiorari denied S/A Industrias Reunidas F. Matarazzo v. Latimer, 338 U.S. 867, 70 S.Ct. 141, 94 L.Ed. 531; French v. Gibbs Corp., 2 Cir., 189 F.2d 787; Knight v. Stockard S.S. Corp., 2 Cir., 214 F.2d 727. And see also Scholnik v. National Airlines, 6 Cir., 219 F.2d 115, certiorari denied National Airlines v. Scholnik, 349 U.S. 956, 75 S.Ct. 882, 99 L.Ed. 1280; and Mississippi Pub. Corp. v. Murphree, 326 U.S. 438, 66 S.Ct. 242, 90 L.Ed. 185, cited supra note 4
 
 
 [7]
 Many, although not all, the opposing district cases are cited by Judge Dimock in his opinion, D.C.S.D.N.Y., 171 F.Supp. 117. See complete discussion by Bryan, J., in Ostow & Jacobs, Inc. v. Morgan-Jones, Inc., D.C.S.D.N.Y., 178 F.Supp. 150
 
 
 [8]
 Compare 1 Moore's Federal Practice P0.317(5) (2d Ed.1959); 2 Moore's Federal Practice P4.25 (2d Ed.1948) with 1 Barron & Holtzoff, Federal Practice and Procedure 695, 696 (Wright Ed. 1960). See also 56 Col.L.Rev. 394 (1956); 5 Duke B.J. 129 (1956); 69 Harv.L.Rev. 508 (1956); 30 Ind.L.J. 324 (1955); 40 Minn.L.Rev. 715 (1956); 34 St. John's L.Rev. 146 (1959); 4 Wayne L.Rev. 164 (1958); 67 Yale L.J. 1094 (1958); Hart & Wechsler, The Federal Courts and the Federal System 960, 961 (1953)
 
 
 [9]
 Pulson v. American Rolling Mill Co., 1 Cir., 170 F.2d 193; Partin v. Michaels Art Bronze Co., 3 Cir., 202 F.2d 541; Albritton v. General Factors Corp., 5 Cir., 201 F.2d 138; Canvas Fabricators, Inc. v. William E. Hooper & Sons Co., 7 Cir., 199 F.2d 485; Steinway v. Majestic Amusement Co., 10 Cir., 179 F.2d 681, 18 A.L.R.2d 179. Compare Kenny v. Alaska Airlines, D.C.S.D.Cal., 132 F.Supp. 838
 
 
 [10]
 There are of course Supreme Court precedents sustaining various of the rules in diversity cases, as in, e.g., Sibbach v. Wilson & Co., 312 U.S. 1, 655, 61 S.Ct. 422, 85 L.Ed. 479 (on F.R. 35, dealing with the physical and mental examination of parties); Mississippi Pub. Corp. v. Murphree, 326 U.S. 438, 66 S.Ct. 242, 90 L.Ed. 185, supra note 4 (on F.r. 4(f), extending the territorial limits of effective service); Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (on F.R. 23(b), dealing with shareholders' actions)
 
 
 [1]
 The four cases cited in fn. 6 of the Court's opinion do not establish any position by this Circuit. In Jacobowitz v. Thomson, 2 Cir., 1944, 141 F.2d 72, the federal rule that prevailed was the statute, now 28 U.S.C. 959, held in Eddy v. Lafayette, 1896, 163 U.S. 456, 464, 16 S.Ct. 1082, 1085, 41 L.Ed. 225, to be intended 'to place receivers upon the same plane with railroad companies, both as respects their liability to be sued for acts done while operating a railroad, and as respects the mode of service.'; on the issue whether the railway itself could have been sued in New York, the opinion relies on New York as well as federal decisions. In Latimer v. S/A Industrias Reunidas F. Matarazzo, 2 Cir., 175 F.2d 184, certiorari denied 1949, 338 U.S. 867, 70 S.Ct. 141, 94 L.Ed. 531, Judge Learned Hand cites and relies on his opinion in Hutchinson v. Chase & Gilbert, Inc., 2 Cir., 1930, 45 F.2d 139, which, in turn, rests in no small part on Judge Cardozo's opinion in Tauza v. Susquehanna Coal Co., 1917, 220 N.Y. 259, 115 N.E. 915. In none of these cases was there any indication that the New York courts would have reached a different result
 
 
 [2]
 This opinion is to be read throughout as subject to the exception stated in the text
 
 
 [3]
 An inference derived from the Constitution underlay Byrd v. Blue Ridge Rural Electrical Cooperative, Inc., 1958, 356 U.S. 525, 78 S.Ct. 893, 2 L.Ed.2d 953, on which the Court so heavily relies. The sentence as to the federal judicial system quoted by the majority was followed, and explained, by the statement, 'An essential characteristic of that system is the manner in which, in civil common-law actions, it distributes trial functions between judge and jury and, under the influence-- if not the command-- of the Seventh Amendment, assigns the decisions of disputed questions of fact to the jury.' Herron v. Southern Pacific Co., 1931, 283 U.S. 91, 95, 51 S.Ct. 383, 75 L.Ed. 857, likewise rested on the Seventh Amendment, as its quotation from Capital Traction Co. v. Hof, 1899, 174 U.S. 1, 13, 14, 19 S.Ct. 580, 43 L.Ed. 873 makes plain
 
 
 [4]
 The position of New York City as a commercial and management center may give New York a very real interest in encouraging foreign corporations to come into the state by limiting their amenability to suit in New York
 A different view might be taken if it were clear that the sole purpose of the limiting statute was to protect the state courts from involvement in cases of no interest to the state and its taxpayers. Cf. Douglas v. New York, New Haven & Hartford R. Co., 1929, 279 U.S. 377, 387, 49 S.Ct. 355, 73 L.Ed. 747; see Hill, The Erie Doctrine and the Constitution, 53 N.W.U.L.Rev. 541, 569 (1958).
 
 
 [5]
 I likewise see no basis for the assumption, which seems implicit in the position of the majority, that federal policy is to extend jurisdiction over foreign corporations as far as due process permits